## COOKE vs. NATHAN.

A guaranty that a promissory note "is good" is in law a contract that the maker is solvent, and that the amount agreed to be paid can be collected by due course of law.

Where a party on transferring a note, guarantees the collection thereof, and the maker, before it becomes due absconds from the state, leaving no property here, the holder is not bound to follow him out of the state, nor to issue an attachment, or commence any action against him, before suing upon the guaranty.

In an action upon a guaranty that a note "is good," the defendant may set up as a defense, that the plaintiff purchased the note of him under an express agreement that the plaintiff should run his own risk as to the solvency of the maker; the plaintiff saying, previous to the signing of the guaranty, that it was only a guaranty that the note was not paid, or that it was genuine, though knowing at the time that it was of different legal effect, viz. that it guarantied the goodness and collectability of the note, and that the defendant was ignorant of the legal effect of such guaranty, and relied upon the plaintiff's representations.

Such a defense is admissible upon the equitable principle that if one of the parties to a contract is in truth ignorant of a matter of law involved therein, and the other knows him to be so, and takes advantage of the circumstance, he is guilty of a fraud, and the court will relieve.

THIS action was brought to recover the sum of $160 and interest from November 19, 1849, upon the defendant's guaranty of a promissory note made by one Joseph Yale, payable to the defendant or bearer and sold by the defendant to the plaintiff. The guaranty was as follows: " Sold Woodbury K. Cooke one note signed Joseph Yale, for $160 dollars and the interest, and received payment in full for the same, and agree that it is good. February 14th, 1850. (Signed) Mayer Nathan." The complaint alleged that before the note became due Yale left the state, and had not since returned; that although the note had become due Yale had neglected to pay the same; that at the time he left the state he was insolvent, so that a debt could not be collected of him by due course of law; and that a suit against him would have been fruitless, for want of any property of Yale in this state, and because of his being out of the jurisdiction of the courts of the state; which were the reasons assigned by the plaintiff for not commencing a suit against Yale, upon the

Cooke v. Nathan.

note. The defendant in his answer alleged that the receipt or bill of sale of said note by him to the plaintiff did not contain at the time it was signed the words " and agree that it is good," but that said words were afterwards inserted and for the purpose only of the defendant's agreeing to the genuineness of the sig-. nature of said Joseph Yale, the maker of said note; that it was not inserted for the purpose of guarantying the payment or collection of said note; that it was so stated at the time and so admitted by the plaintiff, and that he was estopped from denying said statement and admission. And the defendant alleged that he did not guarantee the payment or collection of the said note on the said sale, but that the said plaintiff bought the same of the defendant for the sum of $140, on his own risk as to the responsibility of Yale, and the payment and collection of the same of said Yale at maturity or afterwards; that the defendant expressly declined to guaranty the payment or collection of said note, and that any such agreement or guaranty, if any existed, was fraudulent and void as against the defendant, and was obtained through misrepresentation; and he denied any liability upon the guaranty, and denied that he had ever been requested to pay the note. The plaintiff put in a reply, taking issue upon the allegations in the answer.

On the trial, at the Otsego circuit, in June, 1852, the plaintiff proved the execution of the bill of sale and guaranty, and the note, and that Yale had left the state and was insolvent. The defendant's counsel asked the court to nonsuit the plaintiff, for the following reasons. 1st. That there was not sufficient proof of the transfer of the note from the defendant to the plaintiff, independent of the admission in the answer, which if relied upon by the plaintiff must be taken with the qualification therein stated, to wit, that it was sold for $140, and at the plaintiff's risk; further that the defendant's signature was procured to the bill of sale by fraud. 2d. That the guaranty in the bill only imported that the note was genuine, &c. and not that the maker was or would be solvent and able to pay the note when due. 3d. If otherwise, it imposed upon the plaintiff the duty of attempting to collect; simply proving the maker insolvent was not enough.

4th. The guaranty was a promise to answer for the default, &c. of another person, and void by the statute of frauds, because the consideration is not expressed in writing. The court refused the motion for a nonsuit. The defendant's counsel then opened the defense, and offered to prove that the plaintiff purchased the note of the defendant under an express agreement that the plaintiff should run his own risk as to the solvency of the maker; that the plaintiff said, before the defendant signed the guaranty that it was only a guaranty that the note was not paid, or that it was genuine; that the plaintiff knew at the time it was of different legal effect, to wit, that it guarantied the goodness and collectability of the note, and that the defendant was ignorant of the legal effect of the said guaranty and relied upon what the plaintiff said respecting it, and that by such fraudulent statement the defendant was induced to subscribe the guaranty. The plaintiff's counsel objected to the evidence, and the court excluded the same and each and every part thereof, and the defendant excepted. The jury, under the direction of the court rendered a verdict for the plaintiff for the sum of $189,02, subject to the opinion of the court on a case to be made.

*A. Becker*, for the plaintiff.

*William Barnes*, for the defendant.

*By the Court*, SHANKLAND, J. The guaranty that the note "is good," is in law a contract that the maker is solvent, and that the amount can be collected by due course of law. At the time this contract was entered into, Yale, the maker, resided in this state, but before the note fell due, he absconded to another state and has remained there ever since. We hold on the authority of *White* v. *Case*, (13 *Wend.* 543,) that the plaintiff is not bound to follow him out of the state, nor to issue an attachment, or commence any action against such absent debtor, when he has no property in this state. In this case it satisfactorily appears that Yale left no property in this state, and that any

Cooke *v.* Nathan.

attempt to collect the note, by attachment or otherwise, would have been unavailing.

The next point presents a question of great doubt.   The defendant's counsel offered to prove that the plaintiff purchased the note of the defendant, under an express agreement that the plaintiff should run his own risk as to the solvency of the maker; that the plaintiff said, before the defendant signed the guaranty, that it was only a guaranty that the note was not paid, or that it was genuine ; that the plaintiff knew at the time, that it was of different legal effect, to wit, that it guarantied the gooodness and collectability of the note, and that the defendant was ignorant of the legal effect of such guaranty, and relied upon what the plaintiff said respecting it, and that by such fraudulent statement the defendant was induced to subscribe the guaranty.   This is an exceedingly broad proposition, and if it furnishes either a legal or equitable defense, this court is now competent to sustain it; for we now possess both jurisdictions.   To hold this offer presents no defense, it is necessary to affirm that where parties to a sale of a note expressly agree that the vendor is to warrant the genuineness of the note, only, and not its collectability, and the written agreement contains words, or terms, which in legal effect do warrant its collectability, and that known to the vendee ; but he affirms to the vendor, that such is not the legal effect, and knowing that the vendor is ignorant of the legal effect, and the vendor relying on the vendee's assertion that the legal effect of the words or terms used is contrary to what he knows them to be, and thereby obtains his signature to the guaranty, affords no equitable defense.   We are of opinion that the evidence offered should have been received, as a defense to the action, upon the equitable principle that if one of the parties is in truth ignorant of a matter of law involved in a contract, and the other knows him to be so, and takes advantage of the circumstance, he is guilty of fraud, and the court will relieve. (*Jeremy on Equity Jur.* 366.   *Story's Eq.* § 137, *note* 3.   *See also Story's Eq.* §§ 3, 152, 153.)

Courts of equity reform written contracts on the strength of parol evidence, where material stipulations are fraudulently in-

*serted, omitted* or *suppressed ;* notwithstanding that the doing so, in some degree, breaks in upon the uniformity of the rule of evidence, which excludes parol evidence, to vary or control written agreements. In *Hunt* v. *Rousmaniere's Administrator,* (1 *Peters,* 1,) the principle is stated thus, " It is a principle of equity, that when an instrument is drawn and executed, which professes or is intended to carry into execution an agreement, whether by writing, or by parol, previously entered into, but which by the mistake of the draftsman, either in fact or in law, does not fulfill, or which violates, the manifest intention of the parties to the agreement, equity will correct the mistake, so as to produce a conformity of the instrument to the agreement." (*See also* 9 *Paige,* 188.) In this case, the words in the guaranty, " *and agree that it is good,*" although ambiguous as to meaning, is a warranty that the maker is able to pay the note, by legal construction. Now if the agreement of the parties was that the plaintiff was to run his own risk, as to Yale's solvency, then such a qualification of the guaranty must have been omitted either by the fraud of the plaintiff, or the mutual mistake of the parties, and the above quoted clause inserted by the like fraud or mistake. The defendant's offer would show it to have been done by the fraud of the plaintiff. The offer was to prove the plaintiff knew the effect of those words, and that he knew the defendant was ignorant of their effect, and that he relied upon what the plaintiff said in respect to it. Here then is a case where the defendant mistook the legal effect of an instrument, through ignorance of law ; the plaintiff knew he was laboring under such mistake, and that he relied on what the plaintiff said as to its legal effect, and yet the plaintiff knowingly asserted that the legal meaning of the instrument, was different from what he knew it to be. He knowingly misled the defendant to enter into an obligation more onerous than was agreed upon between them, by means of the confidence reposed in his superior knowledge of the law. We hold this to be such a case as calls for the equitable interposition of this court, and now made available as a defense in this court, by section 149 of the code, which enacts; "The defendant may set forth by answer, as many de-

fenses and counter claims, as he may have, whether they be such as have been heretofore denominated legal or equitable or both." This amendment of the code was in force at the time this cause was tried, but it is proper to add that we have frequently held in this district that no equitable defense was allowed by the code, prior to that amendment. As the verdict was taken subject to the opinion of the court on a case to be made, our proper course is to set aside the verdict and order a new trial, with costs to abide the event.

[OTSEGO GENERAL TERM, July 12, 1853.    *Crippen, Shankland* and *Gray,* Justices.]