## TORRY *vs.* HADLEY.

The plaintiff sold to the defendant a horse, upon the agreement of the latter to deliver to him a good and collectible note of some third person, responsible for the same, for the sum of $200. The defendant subsequently sent to the plaintiff a note made by one P., a stranger to the plaintiff. The plaintiff took the note and laid it away, remarking that he did not know the man. When the note became due, P. was insolvent. *Held* that the note was not received and taken by the plaintiff in absolute payment of the price of the horse, but as a conditional payment; and that the note proving to be worthless, the plaintiff could recover the price, of the defendant.

APPEAL from a judgment entered upon the report and decision of a referee. The referee found as facts, that on the 3d of November, 1853, the plaintiff sold and delivered a horse to the defendant, under a contract between them, that the defendant should deliver to the plaintiff a good and col-

lectible note of a third person, responsible for the same, in the sum of $200 and interest, payable to the plaintiff on the 1st day of July following. That on the 4th of November, 1853, the defendant, under said agreement, delivered to the plaintiff a promissory note made by one Norman Palmer, for the sum of $200 and payable to the plaintiff or bearer by the first day of July, 1854, with interest. When the note became due, Palmer was insolvent. The plaintiff sued Palmer July 10, and August 2 recovered judgment against him upon the note. Execution was issued and returned wholly unsatisfied. On the trial of this action the plaintiff tendered an assignment of the judgment to the defendant. The referee also found that the note was not received and taken by the plaintiff in absolute payment of the price and value of the horse, but in conditional payment.

The referee decided that the plaintiff was entitled to recover. Some exceptions were taken during the progress of the trial. The defendant excepted to the report of the referee as to the facts found, and also as to his conclusion of law.

*James A. Allen,* for the plaintiff.

*E. F. Warren,* for the defendant.

*By the Court,* MARVIN, J. After a careful examination of the evidence relating to the contract between the parties, I have come to the conclusion that the judgment cannot be reversed on the ground that the facts found by the referee are against evidence, or unsupported by the evidence. The evidence upon this question is given by the two sons of the plaintiff. There is no question about the sale and delivery of the horse. The important question was, what was the contract between the parties touching the payment for the horse; or rather, upon what agreement the horse was delivered.

Augustus Torry, a witness for the plaintiff, stated that the defendant came to the plaintiff's and wished to know if the

plaintiff wanted to sell the colt, and the plaintiff said he would sell if he could get his price. The defendant wanted to know if he would take a good man's note, and the plaintiff said he would take another man's note if he would bring a note that was good for it. The defendant said there was no kind of trouble but that the man was good for that amount, and a good deal more. Freeman Torry, a witness for the plaintiff, was not present at the conversation detailed by Augustus, but he heard the bargain told over, after the defendant had examined the colt and concluded to take him. This witness stated, the plaintiff said he was to let the defendant have the horse and take a good note, or a good man's note for it; (witness could not say which way it was said;) the defendant said that was the bargain. This witness went away with the defendant, with the colt. This was on the 3d day of November, and he returned the next day, at evening, with the note. He stated that the plaintiff told him to go and take the colt over to Hadley's, but said nothing about his going to see about the note, but to let the note be, and let the defendant bring it when he got it changed; that defendant spoke about witness going over after the note and making inquiries, and the plaintiff said no, let the defendant bring the note himself, as he (the plaintiff) was in a hurry about his work.

The defendant at the time had a note for over $200, against Palmer, and his object was to have Palmer divide this large note and give one for $200. He did not inform the plaintiff whose note he proposed to give, and it does not appear that the plaintiff knew Palmer. They resided in different towns, and several miles apart. The plaintiff did not authorize his son Freeman to accept any note, or to go for any note, and when the note was brought to him he said he did not know the man, and laid the note away. These facts, I think, are material. The plaintiff sold and delivered the horse upon the agreement, by the defendant, to deliver to him a note of a third man. He did not know who the man was, or was to be. The note was not then made. It is clear that the horse was

Torry *v.* Hadley.

sold and delivered solely upon the promise of the defendant. It is not the case of an exchange of property for the note of a third person, the note being present and delivered at the same time the property is delivered, and the vendor knowing whose note he takes. On the contrary, the defendant promised to deliver a note of a third person, at a future time.

Is it probable that the plaintiff would have parted with his property, upon a promise of payment in the note of a third person, without knowing who that person was, and without any stipulation in the contract touching the responsibility of the maker of the note? This is very improbable. Hence his language, " I will take another man's note if you will bring a note that is good for it;" or, according to the other witness, " I will take a good note," or " a good man's note for it." It was upon such terms only that he delivered the horse.

The referee was justifiable in finding that the horse was delivered upon a contract that the defendant should deliver to the plaintiff a good and collectible note of a third person responsible for the sum. This was an original undertaking, upon a valuable consideration, and entirely outside of the statute of frauds. The defendant never performed his agreement. He never delivered such a note. The plaintiff is not concluded by the fact that he received the note from his son and laid it away, remarking that he did not know the maker. A *good note* meant a note made by a solvent maker and which could be collected by due course of law. (*Cooke* v. *Nathan,* 16 *Barb.* 342.)

It may be conceded that the horse was not sold on credit, in the ordinary acceptation of the term, but that the delivery was upon the condition that payment should be soon made in a particular thing and way. Such payment has not been made. The thing agreed to be delivered has not been delivered, though the plaintiff may have supposed, at the time he took the note, that it was a good and collectible note.

The referee has found, as a fact, and I think his finding is warranted by the evidence, that the plaintiff did not receive

and take the note in absolute payment, but in conditional payment. , If this was so, then the plaintiff can recover upon his cause of action alleged in the complaint, for the price of the horse sold and delivered.

When the note of a third person is taken by the vendor of property at the time of the sale, there is a *presumption* that the parties agreed it should be taken in payment; but this presumption may be rebutted, and if it appear that such was not the agreement, the vendor may maintain his action as for property sold and delivered. (3 *Kern.* 168.) I do not think that any of the exceptions taken upon the trial, or to the report and decisions of the referee, are well founded.

The judgment should be affirmed.

[GENESEE GENERAL TERM, May 17, 1858. *Grover, Marvin* and *Davis,* Justices.]