By the Court.—Neilson, J.*
The plaintiff, as the administratrix of the goods, &c., which were of her late husband, held a lease of a dwelling or tenement house in the city of New York, and let out portions thereof to tenants.
A judgment having been obtained against her personally, proceedings supplementary to execution were had, and Thomas Murphy was duly appointed the receiver of her property. The defendant represented the creditor in those proceedings, and served upon the tenants notices, signed by Mr. Murphy, requiring them to pay the rents to him. In that connection, the defendant stated to such of the tenants as he saw, that he was the one to collect the rents: that he was entitled to receive the rents for Murphy, and that they must pay to him. The tenants, accepting as true the written statement of the receiver, and the assurances of the defendant, made payments, and afterwards assigned to the *110 plaintiff, as such administratrix, their claims to the return of the money.
The rents belonged to the estate ; were payable to the plaintiff, not in her own personal right, but in her representative capacity, and no claim to the rents passed to the receiver by virtue of his appointment.
But the question now presented is whether the money so paid could have been reclaimed by the tenants. The principle involved is familiar, and has been frequently illustrated and applied. If those payments were made under a mistake of fact, or by reason of the tenants having been misled, however innocently, they they were entitled to relief—otherwise not. Money paid with notice of the facts, without false inducements, and owing to an error of law, cannot be reclaimed. One who, in the free exercise of his will, makes a voluntary payment, or, buying peace, pays money to compromise a doubtful claim while under no obligation to do so, makes his election, and should not vex the courts to be relieved from a loss or burden • thus assumed by him.
In some aspects of the case, separately considered, each branch of that rule would seem to be appealed to ; proofs on the one hand indicating an error of law as to the effect of the leases; on the other a mistake of fact as to the title of the receiver, or such ignorance as might well minister to such mistake. Thus, for instance, these tenants knew that their leases had been given by, and that the rents were payable to the administratrix, but not that the receiver had been appointed of the plaintiff’s individual property, as distinguished from that of the estate, or that the defendant, in coming forward to collect the rents, was a mere intruder. If the records, of the judgment, and of Mr. Murphy’s appointment, had been actually before them, and read in the light of an imputed knowledge of the law, they might have discovered the character of the *111 claim made by the receiver, and their right to withhold the payment sought to be exacted. If they had been expressly informed that the receiver had been appointed in proceedings supplementary to execution under the 'Code, they might have known that he had become invested with the title to the plaintiff’s individual property only. But, for aught they knew, that appointment had been made in an equity action, and upon its having been adjudged that the rents really belonged to the plaintiff, in her personal right, and that the form of leasing and collecting rents, as if for the estate, was a mere cover, a device to hinder and delay creditors. Could they have known that a receiver of the rents had not, or could not have been appointed % Or that this receiver had no title to the rents \ The information given in the written notices was not such as to enable them to form a correct legal opinion. Mr. Murphy stated that he had been appointed receiver “of the debts, property, equitable interests, and things in action of the said Mary Ann Barker,” but coupled with, and as if to. give point to that, was the specific claim to these rents as payable to him “as such receiver, and to no one else.” That was calculated to fix the fact that the receivership covered these rents. It was intended to be so understood by the tenants, else why address them, or require payment from them % The peculiar notions which the tenants had of this business, as that they were subpoenaed to pay, and the like, have been disclosed in the testimony, and, while neither the defendant nor the receiver were accountable for impressions taking such form and complexion, they are chargeable with having substantially informed the tenants, and led them to believe, that a receiver of the rents had been appointed. They trusted to representations which appeared to relate to the facts (18 Wend., 419).
Nor had Mr. Murphy himself any clearer concep *112 tion of the proceedings and of his office. He made no investigations, bnt accepted the appointment on the assurance that the property to come into his hands would be the rents. He acted on the defendant’s suggestion,—signed the notices as prepared for him. Hone of the money came into his hands. If he had received the money, the court, whose officer he was, would have required him to surrender it (2 Robt., 668). That which belonged to the estate, to be accounted for before the surrbgate, could not have entered into the receiver’s accounts, nor would any arbitrary assumption of authority by the receiver have been tolerated. The principle favoring such restitution for the benefit of those interested in an estate, even where there had been an assent to the payment by the administrator, under a mistake of law, is illustrated in Davis v. Bagley (2 Am. R., 570), and the duty of the receiver to distinguish between what he should or should not claim, and in doubtful cases to apply to the court for instructions, is well, understood (1 Sandf., 724; 37 Barb., 225; 7 Robt., 613).
The claim by this receiver and the payments by the tenants appear to have been made under a mutual mistake of facts, all parties acting under a misapprehension. The defendant and Mr. Murphy are reliable and upright men, neither of whom would knowingly make an unfounded claim; yet the claims which they concurred in making had no foundation in law or in fact. If the defendant had not been under a misconception, how could he have stated to Mr. Murphy that the rents were to be received ?—or have him sign the notices to the tenants ?—or have enforced these claims by his own acts and words ? It was assumed by all parties that Mr. Murphy had claims which he had not; that the rents were payable to him, when they were not; that the defendant was the one to collect the rents, when he *113 was not. The case, therefore, discloses sufficient evidence of the mutual mistake.
But, whether mutual or not, the mistake must have been one of fact, originating in ignorance, or attributable to undue influence, or fraud. Cases of this class are generally determined with especial reference to the circumstances peculiar to each; the error as to the facts more or less material, being mixed up with questions of law, or having to do with the good faith of the parties. It may often be difficult to distinguish between errors of law and of fact, both of which may be involved in the transaction without prejudice to the claim for relief (3 Pars, on Cont., 399). Yet, while it is not desirable to limit the equitable remedy within the compass of a specific definition, the mistake of fact must be traced as a material element in the case. What error of fact % The question was put and answered by Mr. Justice Maecy, thus: “ What sort of facts are-meant 1 Such facts, I apprehend, as show that the demand on which the money was paid did not actually exist against the person paying, at the time the money was paid” (3 Wend., 72). That is, a supposed demand against the person paying, in favor of the person receiving the money ; a claim to which each party appeared to have some relation. If one owing money to A. pays it to B. by mistake of fact, or under a false inducement, the correction would be as just and proper, and as clearly within the rule, as if he had never owed the money at all.
In Monell v. Wright (1 Wend., 360), Chief Justice Savage, giving a general statement of the principle, says: “An error of fact takes place, either when some fact which really exists, is unknown, or some-fact is supposed to exist, which really does not exist.” The rule thus stated is sufficiently illustrated in cases-where one entitled to the money on a second execution,, assented to its payment to the plaintiff on the first ex *114 ecution, on the mistaken assumption that the property sold had been seized by the sheriff on the first execution within the time allowed by law (40 N. Y., 391); where one ignorant of the fact that his claim had been allowed, contracted to pay another for services to be performed in procuring its allowance (11 Pet., 68); and where money was paid in the belief that there was a claim when these there was not (2 Hall, 252).
In this instance, the error related to the supposed title of the receiver to the rents. When the facts are known, the question of title is generally one of law. But the error may be as to some fact lying at the foundation of the title, and necessary to its existence, as where a sum of money was demanded and paid with the erroneous idea that a penalty had been imposed by statute (10 Barb., 446); where a municipal corporation sold a term or interest in lands supposed to have been acquired by means of an assessment (26 Barb., 423); and where the owner of land sold for taxes sought to redeem, and owing to the impression that he had failed to do so, and that the purchaser at the tax sale had acquired a term or estate, paid a consideration for an unnecessary conveyance (4 Seld., 331). In such cases, the exercise of the power of* correction commends itself to the judgment and conscience of all men. Hence it is, that from the case of Bingham v. Bingham (1 Ves. Sr., 126),—that of the purchase by a party of his own land,—down to the late adjudications on the subject, relief has been granted on strictly equitable principles, and generally without manifesting a disposition to extend, or, even, very freely apply, the rule that money paid under a mistake of law cannot be reclaimed. Its application should be confined to cases falling strictly within it. The penalty imposed upon a mere layman who errs in regard to matters of law, as to which even lawyers might differ, may often seem hard, if not inequitable. It may impoverish him, may *115 enrich his adversary. Cases where money has been obtained by oppression, extortion, or taking undue advantage of the party’s situation, are not within the rule. Of course, a fraudulent representation takes the case out of the rule (16 Barb., 342). But, accepting the doctrine in its severest spirit, the party aggrieved should have knowledge of the facts equal to that which is considered necessary to charge one with an adoption, election, assent, or ratification, as to the transaction which he seeks to repudiate. It is as if the payment or contract had been made on the express condition that the facts inducing the consent existed (1 Am. R., 68).
It is true that these tenants might have inquired into these facts and taken advice, but they were not bound to do so (40 N. Y., 391; 43 Id., 452). But if the rule were otherwise, if they were bound to the prudent exercise of what knowledge they had and might have acquired, before making the payments, they were diverted from the performance of that duty by the state? ments of the receiver, and of the defendant. These statements were sufficiently affirmative and erroneous to amount to a misrepresentation. It may be assumed that they were innocently made, but that is no pro? tection. Nor can it be said that the tenants should not have relied on the assurances made to them.
Upon a careful consideration of the case, I am sat? isfied that the tenants could have reclaimed the money paid, as they acted in ignorance of facts which were necessary to enable them to form a legal conclusion, and under an error superinduced, however innocently, by the defendant.
Why should the defendant retain the money % “It does not belong to him” (3 Comst., 237). It was obtained “without consideration ; not as a gift, but under a mistake” (1 Hill, 290).
The letters of administration were sufficient evi *116 dence of plaintiff’s authority to act. It is to be assumed that the preliminary steps required by statute. had been taken.
It is claimed on the argument by the learned counsel for the appellant, that the receiver took title to one-third of the rents, the widow’s distributive share. There are two difficulties iu the way of that claim. First. It does not appear that these rents can be regarded as the surplus of the personal estate of plaintiff’s decedent, remaining after the payment of his debts (2 Rev. Stat., 183, § 82).. Second. It does not that ■that special view or claim was brought to the notice of the referee.
The action was properly brought by the plaintiff, as assignee. It is only in respect to claims which, not having to do. with property, do not survive,—claims for injuries to the person, which die with the person,—that the objection to an assignment now applies.
Though fraud be unnecessarily or improperly charged in a complaint, that is no objection, if sufficient facts to warrant a' recovery for money had and received, be proved (24 N. Y., 607; 10 Abb. Pr. N. S., 437, and cases cited).
No error was committed by the referee in his rulings at the trial, and none of the exceptions to the report are well taken.
We are of opinion that the judgment should be affirmed, with costs.
Judgment affirmed with costs.

 Present, McCue and Nexlson, JJ.