GORDON et al., Respondents, v. MILLER et al., Appellants.

St. Louis Court of Appeals, March 7, 1905.

1. CHARACTER: Evidence. In a civil action, unless the character of a party is put in issue by the nature of the proceeding itself, or assailed by the opposite party, evidence is inadmissible to show his good character.

2. ——: ——. Where, in a civil action, the answer alleged that the defendant had fraudulently converted a sum of money belonging to the partnership of which he was a member, and evidence was given in support of such answer, this was insufficient to put plaintiff's character in issue so as to make evidence of his good character admissible.

3. INFANTS: Voidable Contracts. The contract of an infant member of a partnership is not void, but voidable at his election, and he may set up his incapacity, to release himself from liability for the purchase price of the firm's assets.

4. ———: ———: **Statu Quo.** But where an infant purchased a stock of goods for which he did not fully pay and afterwards resold the goods to the same parties in consideration of a release of his indebtedness to them, he could not rescind the contract and recover the value of the goods without paying or tendering the balance on the original purchase price.

Appeal from St. Francois Circuit Court.—*Hon. Robt. A. Anthony,* Judge.

REVERSED AND REMANDED.

*Smith & Anthony* for appellant.

(1) Although it may be conceded that plaintiff was a minor, yet the evidence shows that he had been acting for himself and besides, if the contracts, or bills of sale made by him were voidable at his election, yet he could only avoid them on terms that would be equitable under all the circumstances, The law would not permit him to acquire the stock of goods, keep and not pay for them, and hence instruction 2 given for plaintiff is erroneous. Kerr v. Bell, 44 Mo. 120; Craig v. Van Bebber, 100 Mo. 584, 13 S. W. 906; Lacey v. Pixler, 120 Mo. 389, 25 S. W. 206; McKenzie v. Donnell, 151 Mo. 452, 52 S. W. 214. (2) The evidence of Harris as to plaintiff's, Abe Gordon's, reputation being good in the community in which he lives for uprightness and honesty, should not have been admitted, as it was illegal and incompetent. Gutzwiller v. Lackman, 23 Mo. 172; Vawter v. Hultz, 112 Mo. 639, 20 S. W. 689.

*Edward A. Rozier, J. A. Abernathy, B. H. Boyer,* for respondent.

It is conceded by the testimony that plaintiff was a minor, hence plaintiff had full right to affirm or disaffirm the transfer of the stock of goods. Eng. and Am. Ency. of Law, vol. 16, p. 280; Ferguson v. Bell, 17 Mo. 347; Youse v. Norcum, 12 Mo. 549; Shipley v. Bunn, 125

Mo. 445, 28 S. W. 754; Downing v. Stone, 47 Mo. App. 150; Craig v. Van Bibber, 100 Mo. 590, 13 S. W. 906; Baker v. Kennett, 54 Mo. 82; Lacy v. Pixler, 120 Mo. 369, 25 S. W. 206; Ridgeway v. Herbert, 150 Mo. 615, 51 S. W. 1040.

STATEMENT.

In December, 1901, I. W. Miller and H. Miller, under the firm name of Miller Brothers, were the owners of a general stock of merchandise valued at $2,200, situated in their store in the town of Desloge, St. Francois county, Missouri. On the thirtieth of December, 1901, they sold this stock of merchandise to Abe Gordon, plaintiff, and Isaac Bloom for a consideration of $350.35, for the payment of which Gordon and Bloom executed three promissory notes, and for the further consideration that Gordon and Bloom would pay the unpaid bills of Miller Brothers for goods purchased, amounting to $1,884, payments of these bills to be made from the proceeds of the sale of goods by Gordon and Bloom. The contract was reduced to writing and signed by Gordon and Bloom. After the purchase they took possession of the goods under the contract of sale and continued to sell them at retail until the twenty-second day of February, 1902, when, according to the testimony of Gordon, he was held up in the store and robbed of two hundred or two hundred and twenty-five dollars. After the alleged robbery, Bloom, according to his own evidence and that of the defendants, in the presence of and by the consent of Gordon, reconveyed the stock to H. and I. W. Miller by the following written instrument:

"Know all men by these presents: That the firm of Gordon & Bloom, composed of Abe Gordon and Israel Bloom of the town of Desloge, Missouri, parties of the first part, for and in consideration of the sum of fifteen hundred ($1,500) dollars by the firm of Miller Brothers,

composed of H. and I. W. Miller, parties of the second part, the receipt of which is hereby acknowledged, have granted, bargained and sold and delivered, and by these presents do grant, bargain and sell and deliver to said H. and I. W. Miller, their executors, administrators and assigns the certain stock of goods, chattels and merchandise in the store room at Desloge wherein the said firm of Gordon and Bloom have heretofore been doing business, being the same stock of goods in the main, heretofore sold and delivered to said Gordon and Bloom by the said H. and I. W. Miller, and this bill of sale is made for the payment and liquidation of the purchase-price due from said Gordon & Bloom to said H. and I. W. Miller for and on account of said stock of goods, etc. To have and to hold the same unto said parties of the second part, and said H. and I. W. Miller, their executors, administrators and assigns forever, and the said Gordon and Bloom for themselves, their heirs, executors and assigns, hereby covenant and agree to warrant and defend the title to said property unto said second parties against the lawful claims of all persons whomsoever.

"In testimony whereof, the said parties of the first part have hereunto signed their names and affixed their seal, this the seventeenth day of March, 1902.

' "BLOOM & GORDON. (Seal.)"

Gordon denied that he signed the instrument, or was present when it was signed, or that he ever authorized Bloom to sign it for him, or even knew that Bloom had signed it until long after it was signed, and denied that he ever agreed that the stock of goods might be sold or retransferred to Miller Brothers. According to plaintiff's evidence, the next day after he was robbed, the defendants, under pretence of getting into the store to look for traces of robbery, got possession of the store key and took possession of the store, without his consent and against his will, and converted the goods to their own use. The suit is for this alleged conversion

and is brought by plaintiff, who is a minor, by and through his next friend.

The answer was a general denial followed by affirmative allegations to the effect that Gordon, instead of paying the firm debts of Miller Brothers, as he and Bloom agreed to do, fraudulently abstracted from the store one thousand dollars in cash and put the money in his pocket and that his report of having been robbed on February twenty-second was a ruse to cover his speculations, and it further alleged that Gordon and Bloom, willingly and of their own free will and accord, executed the instrument dated March 17th, having previous thereto returned the stock of goods and the possession of the store to Miller Brothers. Ruben Miller, whose trade name seems to be I. Miller, is the husband of defendant Ida Miller, father of H. and I. W. Miller and the uncle of both Gordon and Bloom.

Plaintiff testified that he made the trade for the goods with Miller Brothers and I. Miller, and that he and Bloom executed three notes for a part of the purchase-money; one to I. Miller for one hundred and fifty-three dollars, one to H. Miller for two hundred dollars and one to I. W. Miller for one hundred and eighty-three dollars. Miller testified that he had let Gordon have one hundred and thirty dollars, when he and Bloom went into business together, which, with the one hundred and fifty dollars Gordon had, was placed in the bank to the credit of Gordon and Bloom. Gordon testified that he put in one hundred and seventy-five dollars cash of his own money, but did not deny that he got one hundred and thirty dollars from I. W. Miller, as Miller testified. Plaintiff showed by checks signed by Gordon and Bloom that the firm, during the time it was in possession of the goods, paid accounts of Miller Brothers aggregating $809.70. Gordon denied that he ever took a dollar from the store and converted it to his own use; on the other hand, Bloom testified that Gordon took the money from the store every week, and that they had

some words about it on February 22d, and he went that evening and reported Gordon's conduct to Ruben Miller. Bloom also had Gordon arrested on a charge of embezzling money of the firm but was unable to substantiate the accusation, and Gordon was discharged by the examinating magistrate.

Bloom and some of the Millers testified that when the bill of sale of March 17 was executed, the notes given by Gordon & Bloom for a part of the purchase price of the goods were handed over to Bloom and that he, in the presence of plaintiff and with his consent, tore them up and destroyed them. Plaintiff denied that this was done, denied that the notes were ever torn up or destroyed, and there is some evidence in the record tending to show that, as late as April, 1902, one of the notes (the one for one hundred and eighty-three dollars) was in the possession of I. W. Miller, and that Ruben Miller also had possession of one of them. I. W. Miller testified that three notes were given by Gordon & Bloom, aggregating $560.38, that one was payable to Henry Miller and the other two to himself. Ruben, alias I. Miller, testified that Gordon and Bloom did not give him the notes; that he had never seen any of the notes and knew nothing at all about them. I. W. Miller, who wrote the checks of Gordon & Bloom, kept an eye on their bank account and sales, as he had a right to do under the contract of sale, testified that their deposits aggregated $792 and that the money came from the following sources: $512 from the sale of goods, $150 of Gordon's money and $130 that witness let Gordon have. Checks produced at the trial by plaintiff showed that Gordon & Bloom paid out $821.20 while in business, and Gordon testified that the whole of this money, with the exception of the $175 put into the store by him, was the proceeds of the sale of goods. There is a good deal of other contradictory testimony in the record not necessary to be set forth in this statement.

"1. The court instructs the jury that if they be-

lieve and find from the evidence in this cause that Abraham Gordon was on the seventeenth day of May, 1902, the owner of any goods or merchandise in St. Francois county, Missouri, and that the defendant or any one or more of them converted said stock of goods to their own use, and deprive plaintiff thereof, then the verdict of the jury must be for the plaintiff and against such defendant or defendants so converting such goods, in such sum as the jury shall find to be the reasonable market value of such goods, together with any damages that the jury may find that the plaintiff has sustained by being so wrongfully deprived of said goods.

"2.  It appearing from the undisputed evidence of Abraham Gordon is now an infant under the age of twenty-one years, the court therefore declares the law that any contract entered into by said Gordon concerning the sale and disposition of the stock of goods at Desloge is a voidable contract which said Gordon may disaffirm; and the jury are instructed that if they find that said Gordon has and does disaffirm such contract, that such contract is null and void; and no title has passed thereby.

"3.  The court instructs the jury that if they believe and find from the evidence that any witness in this cause has wilfully sworn falsely as to any material fact in issue, that they are at liberty to disregard the entire testimony of such witness."

The court gave the following instructions for defendants:

"4.  The court instructs the jury that the instrument offered in evidence by defendants, dated March 17, 1902, purporting to have been made by Bloom & Gordon, and signed by them as a firm, and with a mark made by Bloom, if you believe from the evidence it was so signed by them, is a bill of sale for the stock of goods in the town of Desloge, to the firm of Miller Brothers, composed of I. W. and H. Miller; that the consideration for such bill of sale purports to be $1,500, and for it such

stock of goods was sold and delivered to said Miller Brothers. And the court further instructs the jury, that said instrument is binding upon the firm of Bloom and Gordon and each of them respectively according to its terms, unless you find from the evidence that it was secured by the firm of Miller Brothers through fraud, then and in that event it would not be binding on them or either of them; and further the jury is instructed, that if they find from the evidence that plaintiff Gordon was a minor at the time of signing said instrument, that he can and may repudiate it, but before he can repudiate it and escape its obligations, he must pay the notes signed by him or by him and his partner, Bloom, according to their terms, and also pay the bills to the St. Louis merchants as he agreed to do, and unless you find he is willing to do so, or that Miller Brothers by their conduct, put it out of his power to do so, then in that event your verdict should be for the plaintff, otherwise, it should be for defendant.

"5. The court instructs the jury, that if they find from the evidence that the plaintiff and I. Bloom after the reputed robbery of plaintiff Gordon, and the invoice of the goods, signed a contract in the nature of a bill of sale, and that same has not been repudiated by plaintiff turning the store and goods therein back and over to I. W. and H. Miller, thereby releasing any and all claim of title, or interest in and to said goods in consideration of fifteen hundred dollars, then their verdict should be for defendant.

"6. The court instructs the jury, that if they find from the evidence that plaintiff, after his claim of having been robbed, manifested a willingness to turn the store, including the stock of goods therein, after the invoice of such goods, over and back to I. W. and H. Miller, and did so turn them back to the Millers and at the same time receive his notes, which were destroyed by his consent and approval, then you verdict should be for defendant."

Instruction numbered 7, which reads as follows, was asked by defendant and refused:

"7.   The court instructs the jury, that if they find from the evidence, that plaintiff of the firm of Bloom & Gordon, was from time to time taking from the sales proceeds of the store, money, and the same unlawfully appropriating to his own use, and his conduct in this respect was communicated to I. W. and H. Miller and they thereupon demanded possession of the store and the same was turned over to them by the firm, Bloom & Gordon, without any objections from the plaintiff, then your verdict should be for the defendant."

The jury found the issues for plaintiff against all the defendants and assessed his damages at three hundred dollars.   After the return of the verdict, plaintiff dismissed his suit as to I. W. Miller and judgment was rendered against the other defendants, who, after taking the usual steps to preserve their exceptions perfected their appeal.

BLAND, P. J. (after stating the facts).—In rebuttal of defendants' evidence and to corroborate plaintiff, plaintiff put a witness on the stand to prove his good character.   The witness, after stating that he knew the general reputation of the plaintiff in the community in which he lived, was asked to state what his reputation was.   The answer is: "He is a quiet, hard working boy, honest so far as I know."   The defendants had not attacked the general reputation of plaintiff for honesty, morality or virtue or for truth and veracity.   However, it was alleged in the defendants' answer, in substance, that plaintiff fraudulently converted a thousand dollars in money belonging to the firm of Gordon & Bloom to his own use, and Bloom's testimony tends to support this allegation.   On this allegation plaintiff insists that evidence of his good character was admissible.   In respect to this character of evidence, the rule in civil actions is that, unless the character of the party is put in

issue by the nature of the proceeding itself, the charac-
ter of neither party is in issue until assailed by the op-
posite party.   Vawter v. Hultz, 112 Mo. 1. c. 639, 20 S.
W. 689; Gutzwiller v. Lackman, 23 Mo. 168.

In Dudley v. McCluer, 65 Mo. 241, it was ruled:
"The fact that defendant is charged in the petition with
fraudulent dealing, furnishes no ground for the intro-
duction of evidence to prove his good character."

The case of Stark v. Publishing Co., 160 Mo. 529, 61
S. W. 669, was a suit for libel in which the plaintiff
alleged the defendant published of and concerning him
a libel charging that plaintiff represented a corrupt
combination of members of the public school board of
the city of St. Louis before the General Assembly, in
respect to certain school bill then pending before said
General Assembly.   In respect to character evidence,
the court, quoting from Dudley v. McCluer, supra, at
page 550, said:

" 'Putting character in issue is a technical expres-
sion, which does not mean simply that the character
may be affected, but that it is of particular importance
in the suit itself as the character of plaintiff in an ac-
tion of slander, or that of a woman in a suit for seduc-
tion.'   (Porter v. Seiler, 23 Pa. St. 424.)   In those ex-
cepted cases, character affects the amount of the recov-
ery.   The jury are, by law, permitted to consider it in
assessing damages, and it is in that sense that it is said
that 'the nature of the action puts the character in is-
sue.'

"The rule to be deduced from the weight of author-
ity, and recognized in this State, seems to be, that while
proof of plaintff's good character is not admissible in
the first instance as evidence tending to prove that he
was not guilty of the matters with which he is charged
in the publication, it is so admissible as bearing upon
the question of damages to be assessed therefor in the
event that the jury should so find. As that question was
never reached by the jury in this case, conceding that

there was error in refusing this evidence it is not reversible error."

In Lumber Co. v. Hartman, 45 Mo. App. 647, the suit was by attachment. The affidavit for the attachment charged the felonious embezzlement of plaintiff's money by defendant. On a trial of the plea in abatement it was held that evidence of defendant's good character was not admissible for the reason that he was charged with embezzlement by the affidavit for the attachment.

In Grocer Co. v. Tagart, 78 Mo. App. 166, it is said: "Before a party to a suit can introduce evidence of his good character, his character must be attacked as a witness; and if such an attack arises as an incident out of the issues of the case, it affords no ground for corroboration of the party by testimony of his good character for truth and veracity."

The only class of civil cases where character is made an issue by the pleadings are those cases in which the value of character is proper to be considered in estimating the damages as in libel, slander, malicious prosecution, etc. Vawter v. Hultz, supra. No issue of this kind was made by the pleadings in the case at bar and for this reason the admission of evidence to prove plaintiff's good character was erroneous.

The second instruction for plaintiff, of which defendants complain, is correct as an abstract proposition of law. The seventh instruction asked by defendant and refused by the court, we think, should have been given. Gordon's partnership agreement with Bloom was not void but voidable only at his election, and he may set up his incapacity to release himself from liability for the purchase-price of the firm's assets. Bank v. Strauss, 137 N. Y. 148; Pelletier v. Couture, 148 Mass. 269. But plaintiff will not be permitted to derive an undue advantage from his disability. He cannot, at the same time, set up his disability to relieve himself of the firm's debts and retain possession of the

firm's assets.   Com. Co. v. Smith, 86 Mo. App. 490.   The
evidence shows that all of the consideration agreed to
be paid by Gordon & Bloom to Miller Brothers for the
goods was never paid.   Now, if the plaintiff agreed to.
redeliver to Miller Brothers the goods on hand Febru-
ary 23, 1902, in satisfaction of the balance due them,
he cannot repudiate this agreement and recover the
goods themselves or their value without paying or ten-.
dering to Miller Brothers the balance of the original
purchase-price.

The judgment is reversed and the cause remanded.
All concur.