## MILAN BANK, Appellant, v. HENRY RICHMOND.

Division One, July 1, 1911.

1. **PROMISSORY NOTE: Surety: Limiting Liability By Parol.** A surety on a promissory note may by parol prove he is a surety, but he cannot limit his liability to pay the whole debt by proving a simple oral agreement, made by the payee bank's officials, to the effect that in case the principal defaulted he would have to pay only so much of the debt which the written instrument binds him to pay. In spite of such oral agreement, the parties to the written instrument are still bound by its terms and in the manner that contract binds them.

2. **————: ————: ————: Set Up By Another Surety.** Nor can one surety set up for other sureties a defense they could not set up for themselves. He cannot limit or obviate his obligation to pay a promissory note to a bank on the ground that its officials, without his knowledge at the time he signed the note, had orally agreed with other sureties that, in case of the principal's default, the bank would hold them liable for only so many dollars each.

3. **————: ————: ————: ————: To Obtain Other Sureties.** An oral agreement by the bank officials with a surety, before he signed as such, that the names of two other persons would be secured as sureties before delivery of the note, and the securing of such other persons to sign the notes as sureties under an agreement that, if they had to pay, their liability would be limited to a certain small sum, will not avail to release said surety on his obligation to pay the whole note. In the absence of fraud, mistake, failure of consideration, etc., a surety must abide the terms of his written undertaking as to the amount of his liability, despite an oral agreement to the contrary.

4. **————: ————: Representation That Collateral Note Is Good.** A representation that the persons whose names appear on a note are as "good as gold" does not constitute a warranty that the signatures are genuine. Representations by the bank officials to the surety that the bank held a note for a certain sum by a firm "who are as good as gold," and that the note would be held as collateral security for the note the surety was asked to sign, is not a representation that such firm had signed the note, and is not a defense to a suit on the note which the

surety signed, and especially should it not be held to be a defense where there is no evidence that the firm were not solvent, and there is evidence that the collateral note was a forgery and that the surety had knowledge that his principal had previously forged notes, and there is no evidence that the bank officials had knowledge of such prior forgery.

5. ———: ———: Representations: Knowledge of Falsity. In order to discharge a surety it is not necessary that the creditor have knowledge of the falsity of a representation which he makes as a fact and by which he induces the surety to obligate himself for his principal's debt.

6. ———: ———: ———: Reliance Thereon By Surety: Inquiry Leading to Knowledge. It is competent to permit the surety to testify that he relied upon the representations made to him by the payee of the note as facts, and was induced thereby to sign the note; nor does it destroy the surety's defense when sued on the note that he had knowledge of certain facts which might have put him on inquiry.

7. INSTRUCTION: Burden of Proof. After the court has correctly instructed as to the burden of proof, it is unnecessary and may be misleading to further instruct the jury that "on passing upon any issue in this case they should find in favor of the party having the preponderance of the evidence."

8. IMPEACHMENT: Supporting Witness's Veracity By Proof of Reputation. A charge in the answer that the bank official had made certain false representations to defendant, which induced him to sign the note to the plaintiff bank, did not put the official's character in issue so as to justify the introduction of evidence in support of his good reputation, nor would evidence in support of those charges do so; nor would the fact that the official went on the stand and denied he made those representations. None of these things amounted to an impeachment of his general reputation for veracity and honest dealing.

Appeal from Macon Circuit Court.— *Hon. Nat M. Shelton,* Judge.

REVERSED AND REMANDED.

*Calfee & Painter, Harber & Knight, Guthrie & Franklin* for appellant.

(1) There is no averment in the petition that the plaintiff had a right to believe the alleged statements

or that he acted prudently in believing them. Mc-Nealey v. Baldridge, 106 Mo. App. 11; Funding Co. v. Heskett, 125 Mo. App. 531; Davis v. Ins. Co., 81 Mo. App. 267; Cahn v. Reid, 18 Mo. App. 115; Lovelace v. Suter, 93 Mo. App. 438; Bank v. Trust Co., 179 Mo. 648.    (2)    The evidence fails to show any ground or reason authorizing the defendant, Richmond, to trust the alleged representations, but shows his complete opportunity to make investigations.    (3)    The evidence fails to show any wilful fraud on the part of the plaintiff. Green v. Warren, 83 Mo. App. 574; Bank v. Trust Co., 179 Mo. 648.    (4)    Defendant's instructions are erroneous and prejudicial.    Authorities supra; Mires v. Summerville, 85 Mo. App. 183.  Slaughter v. Gerson, 13 Wall. 379; Andrus v. Smelting & Refining Co., 130 U. S. 643; Farnsworth v. Daffner, 142 U. S. 43; Mabardy v. McHugh, 202 Mass. 148, 132 Am. St. 484; Chase v. Rusk, 90 Mo. App. 25; Remmers v. Remmers, 217 Mo. 541; Ins. Co. v. Wolfson, 124 Mo. App. 286; Text-Book Co. v. Lewis, 130 Mo. App. 158; Laclede Co. v. Tie Co., 185 Mo. 25; Cummings v. Kent, 44 Oh. St. 92, 58 Am. Rep. 796; Gridley v. Dole, 4 N. Y. 486.    Mansur-Tibbets Co. v. Ritchie, 143 Mo. 587; Norman v. Oberle, 90 Mo. 666; Muenks v. Bunch, 90 Mo. 500; Henry v. Buddecke, 81 Mo. App. 360; Redpath v. Lawrence, 48 Mo. App. 428.

*A. W. Mullins, Wilson & Clapp, Wattenbarger & Bingham* for respondents.

(1)    The plaintiff offered no objection to the defendant's instructions, neither did it object to the court's giving the instructions.  It is therefore precluded from objecting to them in the appellate court. Merely excepting to the action of the trial court in giving them is not sufficient.  Sheets v. Ins. Co., 226 Mo. 613; State v. Reed, 128 S. W. 4.    (2)    Defendant's instructions properly declare the law.  Brokerage Co. v. Gates, 190 Mo. 391; Bank v. Gay, 114 Mo. 208;

Nauman v. Oberle, 90 Mo. 666; Chase v. Rusk, 90 Mo. App. 25; Miller v. Rankin, 136 Mo. App. 430; Cottrill v. Krum, 100 Mo. 397; Brolaski v. Carr, 127 Mo. App. 286; Leach v. Bond, 129 Mo. App. 315; White v. Reitz, 129 Mo. App. 307; Lucher v. Keeney, 98 Mo. App. 394. (3) The evidence discloses that McCallister, the cashier, had charge of the fiscal affairs of the Bank, and had the power to pass on all notes taken by the Bank. His acts were therefore the acts of the Bank and appellant is bound thereby. Bank v. Dick, 73 Mo. App. 354; Young v. Hudson, 99 Mo. 107; Bank v. Hughlett, 84 Mo. App. 268; Powers v. Woolfolk, 132 Mo. App. 354. (4) The evidence of the defendant that he relied on the representations of McCallister were admissible. 6 Ency. Ev. 69; Ackman v. Jasper, 179 Pa. St. 463; Baker v. Mathew, 115 N. W. 15. (5) Evidence as to the general reputation of McCallister was not admissible. He had been contradicted, not impeached. Berryman v. Cox, 73 Mo. App. 67; Browning v. Railroad, 118 Mo. App. 449. (6) The court did not err in giving instructions. This transaction being conceived in fraud, the bank can not now be heard to say that the agreement so made with Moran and Ford was merged in the note and thereby exclude this evidence and deny us of our defense. As between the parties to the note, want of consideration or fraud can always be set up as a defense to defeat a recovery on the note. Culp & Co. v. Powell, 68 Mo. App. 238; Remmers v. Remmers, 217 Mo. 541. Moran and Ford could have defeated a recovery on the note sued on in excess of $250 as to each of them—and this the bank conceded by the dismissal of this suit against them; and if the note was invalid as to them by reason of fraud in obtaining their signatures to the note, then Henry Richmond, being a surety, could not have enforced contribution from them as co-sureties, and it would have operated as a release as to him as surety on the note. The question in this case is fraud on the part of plaintiff bank and a note so obtained can

not be enforced. This is not a question of varying the terms of a note or a written contract. If fraud is attempted to be perpetrated of course such fraud is never set out in any provision of the note. A note is simply an instrument for the absolute and unconditional payment of money, but the right to defend against it on the grounds of fraud has never been denied by the courts of this State. The plaintiff does not admit that it made any of the representations charged in defendant's answer, but positively denies each and all of them. The jury believed the testimony of Henry Richmond, Joe P. Moran and Alec Ford and returned into court the verdict for defendant. If Moran and Ford were told by McCallister and Orear that they would only be liable on the note for $250 each and signed the note with that express understanding, then a court of equity in a proper proceeding brought by them would reform the contract. Hence this evidence was admissible in the suit by the Bank against Richmond, who signed with the express understanding that Moran and Ford would sign the note and thus become jointly liable with him to the extent of whatever property they owned, not for $250 only.

BLAIR, C.—In January, 1906, the Milan Bank sued respondent on a note for seven thousand dollars signed by respondent and four others. The answer admitted the bank's incorporation and that respondent signed the note, but averred that he did so as surety for his son and was induced to sign by false representations of the bank officials to the effect that (1) the principal had put up collateral notes of the value of $3800, and that among these was one note for $3585, "which was good;" (2) the bank had taken a mortgage on seventy-six head of steers which they knew belonged to the principal; (3) the note sued on would also be signed before delivery by Amon Richmond, Joe P. Moran and

· J. A. Ford, and (4) that Moran was the owner of three hundred and twenty acres of land unincumbered.

The answer negatives the truth of these representations, avers that the signatures to the $3585 note were forged, that the seventy-six head of steers were not the property of the principal, that Moran owned but two hundred acres of land and that was incumbered, and Moran otherwise indebted, and that though Moran and Ford signed as sureties the note in suit, yet they did so by reason of the bank's agreement to hold them liable for but $250 each.  ·

In support of his defense respondent detailed the following conversation with the officers of the bank:

"He [McCallister, the cashier] was in the front part of the bank. He was not inside of the rail, but on the outside. We went back to Orear's office; when we went back there he asked me or told me that Henry is overdrawn in the bank, and is behind seven thousand dollars. He has got two notes in here, five thousand dollars with some payment on it, and we would put the notes together and would make a seven-thousand-dollar note, and he said one of those notes you had ought to know something about. He said, 'Your brother Amon will sign it, Alex. Ford and Joe Moran.' He said, 'You know what Amon and  Alex are worth, and Joe Moran,' he said, 'has got three hundred and twenty acres of land all clear.' I said, 'Joe, I could not sign a note like that. I could not begin to pay it without selling my home, I don't want to do that.' He said, 'Henry has got thirty-eight hundred dollars of notes here, and one is on the Peters Commission Company. This company is as good as gold, and I am ready to say that the note is all right.'· Mr. Orear spoke up and said, 'That will leave thirty-two hundred dollars.' Joe then said, 'We have got a mortgage on seventy-six head of two-year-old steers we know belong to Henry, and will release the mortgage as soon as the note is signed up and delivered to the bank,' and I

said, 'Well, Joe, if that is all right I reckon I can sign it,' and he said, 'That is just the way it is. I will give you ninety or one hundred and twenty days for the notes to come due, and turn his cattle and it will put him right on his feet.' I said 'I will go and see Henry.' I went and seen Henry, and found him on the east side of the square. I talked with him a little bit, about that note."

On returning to the bank with his son, respondent without further ado signed the note in suit.

There was testimony to the effect that Moran and Ford signed with an "understanding" that they would be responsible for no greater sum than two hundred and fifty dollars each. This "understanding" was not based upon any direct promise of the bank officials to that effect, but rather upon statements to that effect made by Ford and Moran themselves to the bank officials.

The names of the payers on the three thousand five hundred and eighty-five dollar note mentioned in the answer are indicated by the evidence to have been forged by W. H. Richmond. There is no evidence that the persons whose names appeared on this note were insolvent.

The cattle referred to in the answer were sold by W. H. Richmond to one McCullough in March, 1905, and simultaneously repurchased under an agreement whereby McCullough was to retain possession of the cattle until October, 1905, when he was to be paid the purchase price and one dollar per month per head in addition thereto. Richmond paid McCullough one hundred dollars down on this account. It does not directly appear whether McCullough had paid Richmond for the cattle or whether the contract was merely one for pasturage. One Ryan, however, was surety on the contract and took the cattle in November, 1905, paying McCullough the purchase price and one dollar per month per head for the cattle. The bank had a mortgage on ninety-two steers located by that instru-

ment on the Maggart farm owned by McCullough at the time of respondent's conversation with the bank officials.

At the time he signed the note in suit, respondent knew his son, the principal in the note in suit, had a short time theretofore forged his, respondent's name, to a note for five hundred dollars, and testified that his name on one of the five thousand dollar notes taken up by the note in suit was also forged. He did not advise the bank officials of these facts. The note in suit was given to consolidate two five-thousand-dollar notes, less some credits, on each of which W. H. Richmond, respondent's son, was principal, on one of which respondent's and Amon Richmond's names appeared as sureties, and on the other the names of Ford and Moran.

Between the dismissal of a former attachment and the commencement of this action, respondent stripped himself of practically all his property, the property in part being transferred to a younger son, and the proceeds of the rest being turned over to respondent's wife.

I. So far as concerns Ford and Moran, neither fraud in securing their signatures, nor mistake, nor failure of consideration as to them, is pleaded. [Kulenkamp v. Groff, 71 Mich. 675.] Had they been defendants in the case, they could not have been heard to say that their liability was limited, by a simple oral agreement to that effect with the bank officials, to a sum less than that expressed by the terms of the note. A surety may prove the fact of his suretyship by parol, of course, but 'not to affect the terms of the contract, but to prove a collateral fact and rebut a presumption. The parties still remain bound by the same instrument and *in the same manner.*' [Brandt on Suretyship and Guaranty, sec. 38.] This rule is not broad enough to let in, in this case, proof by parol to cut down the sum the surety has engaged by the writing to pay in case of default of his principal.

If Ford and Moran could, by such agreement, have limited their liability to two hundred and fifty dollars, they might have limited it to one dollar. Did such a rule exist, the obligations of sureties would depend, not upon the instrument they signed, but upon their veracity and the credulity of the jury. [Kulenkamp v. Groff, *supra.*]

That in the absence of fraud, mistake, failure of consideration, etc., even a surety must abide the terms of his written undertaking as to the amount of his liability, despite a prior parol "understanding" to the contrary, is settled.    [Smith's Admrs. v. Thomas, 29 Mo. 307; Ewing v. Clark, 76 Mo. 545, 8 Mo. App. 570; Coats v. Swindle, 55 Mo. 31; Jones v. Shaw, 67 Mo. l. c. 670; St. Louis Perpetual Ins. Co. v. Homer, 9 Metc. 39; Hunt v. Adams, 7 Mass. l. c. 522; Dendy v. Gamble, 59 Ga. 434; Goddard v. Hill, 33 Me. 582; Huey v. Pinney, 5 Minn. l. c. 317; Singer Mfg. Co. v. Potts, 59 Minn. 240; Carter v. Hamilton, 11 Barb. 147; Concord Bank v. Rogers, 16 N. H. 9; Catlin v. Harris, 7 Wash. l. c. 546.]

It follows that respondent's efforts to predicate his release upon the alleged agreement of the bank officials to secure the signatures, as sureties, of Ford and Moran and the further allegation that, though such signatures were secured, there was an oral agreement limiting their liability, must fail.    Respondent can not set up for Ford and Moran a defense they could not set up for themselves.    [St. Louis Perpetual Ins. Co. v. Homer, *supra.*]

It was error to admit testimony and instruct on the contrary theory.

II.    The court instructed the jury that they must find for respondent if they found that the officers of the bank falsely represented to him "as an inducement for him to sign  .  .  .  .  as surety  .  .  .  that the principal in said note, W. E. Richmond, had put up

with said bank as collateral security on his indebtedness, promissory notes amounting in the aggregate to the sum of $3800, and that among said collateral notes was one for $3585, which was good," etc.

This portion of the instruction is a literal copy of certain allegations of the answer.

It is at least doubtful whether there was any evidence that any notes were "put up with the bank as collateral security," and it is certain there was no representation that the signatures to the $3585 note were genuine.  A representation that a note is "good" imports both the solvency of the makers and the collectibility, by suit, of the note. [Cooke v. Nathan, 16 Barb. 342.]  But a representation merely that the persons whose names appear on the note are "good" does not constitute a warranty that the signatures are genuine.

Respondent testified that the cashier stated to him that the Peters & Brandom Company was as "good as gold."  The answer does not assail and the evidence does not impeach the solvency of Peters & Brandom. Respondent was advised of the facility with which his son wielded his pen.  He did not disclose his knowledge thereof to the bank officials.

There being no representation as to the genuineness of the signatures to the $3585 note, and no evidence that the signers thereof represented to be solvent were otherwise, the trial court erred in instructing that the fact that the signatures to the note mentioned were forged constituted of itself a defense.  If the bank officials had had knowledge of the forgery and then had made use of their possession of the note to induce respondent to become surety for his son, a different question would be presented.  The instruction did not proceed on this theory.

The additional statement of the cashier, "and I am ready to say this note is all right," was but an expression

of opinion, which did not enlarge the statement that the company was "as good as gold."

III.   After correctly instructing as to the burden of proof, the court, at respondent's instance, instructed the jury that "in passing on any issue in this case they should find in favor of the party having the preponderance of the evidence."

This instruction fails to direct the jury as to their duty in case, in their minds, the evidence preponderated for neither party.   While we do not decide that the giving of the instruction constituted reversible error, we do say that it was wholly unnecessary and might have been misleading.   It should not have been given.

IV.   It is asserted that the trial court erred in refusing to permit appellant to support the witness McCallister by proof that his general reputation for truth and veracity and honesty and fair dealing was good.   The record discloses merely that after respondent and his witnesses testified, McCallister went upon the stand and contradicted them in several particulars, as did other officials of the bank.   His reputation was not directly assailed by proof that it was bad, nor was there proof in rebuttal, by way of impeachment, that he had made contradictory statements out of court. The cross-examination to which he was subjected was no more than a fair effort to test his memory and the truth of his direct testimony.

The answer, in effect, charged McCallister with having made certain false representations to respondent, but that charge did not put his character in issue so as to justify the introduction in his support of general evidence of his good reputation (Black v. Epstein, 221 Mo. l. c. 305; Dudley v. McCluer, 65 Mo. 241; Gordon v. Miller, 111 Mo. App. 342) and, since the averments of the answer did not put his character in issue, it follows that evidence in support of those averments would not do so.   So far as the offer to prove the good

reputation of the witness as to truth and veracity is concerned, it is sufficient to say that mere conflict of testimony does not warrant the admission of such evidence. [State v. Fogg, 206 Mo. l. c. 716.] It is unnecessary for us to discuss the doctrine of the cases which are cited (Browning v. Railroad, 118 Mo. App. l. c. 459; Cox v. Polk, 139 Mo. App. l. c. 265) in this connection, since the rule they and like cases announce is inapplicable on the record made in the case before us.

V. Appellant contends that knowledge of the bank officials of the falsity of the representations made by them must be proved before respondent can rely upon such representations to discharge him. Such is not the law. In order to discharge a surety it is not necessary that the creditor have knowledge of the falsity of a representation which he makes as a fact and by which he induces the assumption of the relation. [Woolley v. Louisville Banking Co., 81 Ky. l. c. 537; Harter Co. v. Pearson, 26 Ohio Cir. Ct. Rep. 601; Willis v. Willis, 17 Simons, 218; Molson Bank v. Turley, 8 Ont. l. c. 307.] The trial court did not err in refusing certain instructions out of harmony with this principle.

VI. There was no error in permitting respondent to testify that he relied upon the representations made, and was induced to sign as surety by reason of his belief in them. [Blaney v. Rogers, 174 Mass. l. c. 280.] Nor does it destroy respondent's defense that he may have had knowledge of certain facts which might have put him upon inquiry. Even in actions for damages for fraud and deceit, "a man to whom a particular and distinct representation has been made is entitled to rely on the representation and need not make further inquiry, although there are circumstances in the case from which an inference inconsistent with the representation might be drawn" (Kerr on Fraud, 80; Cottrill v. Krum, 100 Mo. l. c. 405), and in the case of false rep-

resentation made to induce a surety to sign a note this rule is somewhat further relaxed.

The question as to whether respondent had knowledge of the actual facts when he returned with his son to the bank and signed the note was for the jury under proper instructions.

The judgment must be reversed and the cause remanded for further proceedings not inconsistent herewith. *Brown, C.,* concurs.

PER CURIAM.—The foregoing opinion of BLAIR, C., is adopted as the opinion of the court. All the judges concur.