Vol. 308]        OCTOBER TERM, 1924.        109

State ex rel. Bonding & Insurance Co. v. Allen.

# THE STATE ex rel. MASSACHUSETTS BONDING & INSURANCE COMPANY v. WILLIAM H. ALLEN et al., Judges of St. Louis Court of Appeals.

### Division One, April 13, 1925.

1. **REPUTATION: Suit on Bond: Guaranty of Honesty: Proof of Good Character.** In an action on a bond, whereby the surety guaranteed to pay such loss of money as the obligee might sustain by any act of dishonesty or embezzlement of his employee, it is not error to refuse to permit the surety to prove the reputation of such employee for veracity, honesty or morality, where his general reputation has not been attacked, whether he be regarded as a party or merely as a witness, or both. As a party, evidence relating to the employee's general character is inadmissible, because the nature of the action does not put his character in issue; as a witness, proof that his testimony is contradictory or untrue does not amount to an attack upon his general reputation for veracity or honesty.

2. ———: ———: ———: **Charge of Embezzlement: Of Itself an Attack on Veracity and Honesty.** In an action on a bond, whereby the surety guaranteed to pay such loss of money as the obligee might sustain by any act of dishonesty and embezzlement of his employee, the employee's character is not put in issue by a petition charging and an answer denying that the employee had embezzled the obligee's money, and evidence relating to his general character is not admissible, where no attempt to impeach his reputation is made. Even if the action were criminal, instead of civil, wherein the employee stood charged by indictment of the crime of embezzlement, his character would not be in issue, but only incidentally affected by a verdict.

3. ———: ———: ———: ———: **Fraudulent Intent: Conflict of Decisions.** In a criminal prosecution for embezzlement, evidence of the previous good character of defendant is received, not because his character for veracity and honesty is thereby put in issue, but only because it aids in determining the intent with which the act charged as a crime was done, and there the intent is an issue. In a civil action on a bond, tried on the theory that the surety's liability depended on whether the employee had fraudulently appropriated to his own use the obligee's money, the employee's intent is an issue; but whether evidence of the employee's previous good character is admissible in such civil suit, as an aid in determining the intent with which he appropriated the money, is not

decided in this *certiorari* proceeding, because this court has never passed upon the point, and therefore the ruling of the Court of Appeals that such evidence of good character did not put the employee's character in issue and for that reason was not admissible in the civil action does not contravene prior decisions of this court.

4. **ACTION ON BOND: Vexatious Delay: Attorney's Fees: Sufficient Evidence.** Where its opinion indubitably shows that the Court of Appeals, in determining whether the evidence was sufficient to take to the jury the question whether the defendant had vexatiously refused to pay the obligation of the bond sued on, invoked the general principles which this court has repeatedly held should be the guide in disposing of such question, this court will not quash such opinion, unless it appears that this court has differently applied such principles to the same or a similar state of facts. If this court has never decided that such or similar facts would not support a finding that a refusal to pay was vexatious, it is not within the province of this court to determine whether or not the Court of Appeals made a sound application of the principles previously announced by this court to the facts before it.

Citations to Headnotes: Headnote 1: Fidelity Insurance, 25 C. J. sec. 28.    Headnote 2: Fidelity Insurance, 25 C. J. sec. 26.    Headnote 3: Courts, 15 C. J. sec. 518. Headnote 4: Courts, 15 C. J. sec. 518.

## *Certiorari.*

WRIT QUASHED.

*Leahy, Saunders & Walther* for relator.

(1) When the character of a witness for truth and honesty is attacked in any way, it is competent for the party calling him to offer evidence showing his trustworthiness. Costello v. Kansas City, 280 Mo. 576; State v. Weissman, 238 Mo. 547. (2) When the petition charges the principal upon a bond with crime, and the answer denies the alleged crime, and when the issue whether the principal was guilty of the crime charged is submitted to the jury, the question of the character of the principal for truth and honesty is put in issue by the nature of the proceeding itself, and evidence of his character and reputation for truth and honesty is admissible. Orris v. Rock Island Ry. Co., 279 Mo. 1; Gutzwiller v.

Lackman, 23 Mo. 168; Costello v. Kansas City, 280 Mo. 576; State v. Weissman, 238 Mo. 547. (3) The giving of plaintiff's instruction on the question of vexatious refusal to pay was error, as there was no issue of vexatious refusal to pay in the case. Non-Royalty Shoe Co. v. Phoenix Assurance Co., 277 Mo. 399; State ex rel. Ins. Co. v. Allen, 243 S. W. 842; Aufrichtig v. Ins. Co., 249 S. W. 916; Cradick v. Ins. Co., 256 S. W. 504. The penalty instruction should not have been given in any event, because it did not include the elements of (a) a refusal to pay prior to the institution of suit; (b) willfullness in thus refusing to pay, and (c) as the facts appeared to a reasonable and prudent man before trial. Non-Royalty Shoe Co. v. Phoenix Assurance Co., 277 Mo. 399.

*John V. Lee* for respondents.

(1) Inquiry on *certiorari* is limited to contents of opinion, which is final and conclusive as to the facts, precluding consideration of all questions of evidence not therein stated. State ex rel. v. Allen, 243 S. W. 841; State ex rel. v. Ellison, 266 Mo. 610; State ex rel. v. Reynolds, 213 S. W. 804; State ex rel. v. Ellison, 208 S. W. 443. (2) The scope of review on *certiorari* concerns solely the question of conflict of conclusions of law on facts stated; error of opinion not in conflict or merits of the case as presented below not considered. State ex rel. v. Reynolds, 200 S. W. 1041; State ex rel. v. Ellison, 220 S. W. 501. (2) Opinion below contains conclusions of law on facts stated in no wise in conflict with the decisions of this court. Lockwood v. Atlantic Mut. Ins. Co., 47 Mo. 50; Browning v. Railroad, 124 Mo. 71; Minter v. Bradstreets Co., 174 Mo. 444; Smith v. Fordyce, 190 Mo. 1; Waddell v. Railroad, 213 Mo. 8; Norris v. Railroad, 239 Mo. 695; King v. St. Louis, 250 Mo. 501; Powell v. Railroad, 255 Mo. 420; State ex rel. v. Reynolds, 257 Mo. 38; Sang v. St. Louis, 262 Mo. 463; Hoover v. Elec. Terminal Ry., 227 S. W. 79. (3) Putting character in issue means that it must be of particular importance, and not simply that it may be affected or that it arises as

a mere incident. Orris v. Railroad, 279 Mo. 1; Bank v. Richmond, 235 Mo. 532; Vawter v. Hultz, 112 Mo. 633; Alkire Gro. Co. v. Taggart, 78 Mo. App. 166.

RAGLAND, P. J.—*Certiorari,* to quash, on the ground of conflict with decisions of this court, the judgment and opinion of the St. Louis Court of Appeals in a cause lately depending before it, entitled: "Niese Grocer Company, a corporation, Respondent, v. Massachusetts Bonding & Insurance Company, a corporation, Appellant." The opinion therein follows:

"This is an action upon a fidelity bond, executed by the defendant, whereby in consideration of a premium paid to it defendant, among other obligations assumed by it, guaranteed to pay to plaintiff such pecuniary loss of money or other personal property as plaintiff might sustain by any act or acts of fraud, dishonesty, forgery, theft, larceny, embezzlement, wrongful abstraction or willful misapplication on the part of one Robert A. Glassey, an employee of plaintiff, not exceeding the sum of $1,000.

"It is unnecessary to set forth the pleadings at length. The petition, after making allegations as to the execution and tenor of the bond, alleges that there was a breach thereof in that Glassey, as plaintiff's employee, 'by acts of fraud, dishonesty, forgery, theft, larceny, embezzlement, wrongful abstraction or willful misapplication,' converted to his own use money of plaintiff in the sum of $2025, which came into his hands by virtue of his employment while the bond was in force and effect; alleges that plaintiff complied with all the conditions of the bond, and that defendant vexatiously refused to pay the loss, and prays judgment for $1,000, the penalty of the bond, and for a reasonable attorney's fee.

"The answer admits the execution of the bond and puts in issue the other allegations of the petition.

"The plaintiff corporation was engaged in the wholesale grocery business in the city of St. Louis, and Glassey was employed by it as a salesman to solicit orders from

retail dealers in the city of St. Louis. Glassey's employment with plaintiff began in February, 1918, and continued until the latter part of January, 1920. It is not disputed that the bond sued upon was in force and effect at the time of plaintiff's alleged loss.

"According to the testimony in plaintiff's behalf, Glassey was employed by plaintiff under an oral contract by which he was to receive a commission on goods sold by him of forty-five per cent of the 'ascertained profits' on such goods (no commission being paid on sugar or returned goods), he being allowed a drawing account, at first, of $37.50 per week, which was later increased to $47.50, and subsequently reduced to $37.50. The rules of the company required Glassey to mail to plaintiff daily an 'individual slip' for each collection, together with all checks received by him from customers for goods sold and delivered to them; and he was likewise required to make 'prompt remittance for cash collections, though he was permitted to deposit such collections in his own bank account and to mail his personal checks therefor to plaintiff. The testimony for plaintiff is to the effect that the profits were figured on the basis of the true cost of the commodities without the addition of expense of conducting the business, plaintiff being credited with forty-five per cent of such profits on goods sold by him; and that Glassey was furnished with a loose-leaf book showing cost prices and selling prices, which was revised from time to time, and was furnished each month with a statement showing the profits on the goods sold by him and his share thereof.

"It appears that early in January, 1920, plaintiff learned that Glassey was not making daily reports, and had failed to report some collections which he had made. One Buhrmann, plaintiff's credit man and accountant, who stated that he had personal supervision of plaintiff's books and records relating to the accounts of sales- 'men, testified that he called Glassey's attention to these unreported collections, and that Glassey said he would 'fix it up' in a few days, but that nothing further was done

308 Mo. Sup.—8.

about it until the evening of January 23, 1920, when he telephoned Glassey at the latter's home, and was told by Glassey that the matter 'was all fixed up and was in the mail.' It appears that the following day, or within a day or two, plaintiff received from Glassey a letter enclosing a statement prepared by him, with his check for $285.13. In this statement Glassey made a list of various sums collected by him from customers of plaintiff and which he had not reported, aggregating $2,457.06. To this he added an item of $464.47, being the amount which, according to his figures, he was then overdrawn on plaintiff's books. He charged himself with the sum of these two items, to-wit; $2,921.53, and credited himself with $2,025, as follows: 'I sold about $108,000. Due me $2,025 —1⅞%.' He then took further credit for certain checks said to have been mailed by him to plaintiff, aggregating $611.40, and for the amount of his personal check, to-wit, $285.13, balancing the account. In his letter he tendered his resignation.

"The testimony adduced by plaintiff and the exhibits introduced by it tend to show that Glassey's total sales for plaintiff (exclusive of sugar) amounted to $107,974.-57; that the total profits thereon were $8,106.31, of which Glassey's share (45 per cent) amounted to $3,647.85; and that upon the termination of his employment with plaintiff there was due from him to plaintiff $2,455.81, of which $555.69 was the true amount of the overdraft referred to in Glassey's letter mentioned above. Such was shown to be the status of Glassey's account upon plaintiff's books. It is unnecessary to refer in detail to the voluminous evidence touching the matter. There is some dispute in the testimony as to a few minor items which, it is claimed, Glassey collected and for which he did not account; but since the items could make a difference of but a few dollars in the account, and the recovery is limited to the penalty of the bond, it is needless to encumber the opinion with a statement of the testimony relative thereto.

"It further appears that plaintiff duly made demand upon defendant some months prior to the institution of

the suit, filing with defendant a verified claim, but that defendant declined to pay the idemnity vouchsafed by the bond. And there is testimony in plaintiff's behalf tending to show that $500 is a reasonable attorney's fee for the services rendered by plaintiff's counsel in connection with the prosecution of the suit.

"Glassey, testifying as defendant's witness, said that his contract with plaintiff was that he was to receive forty-five per cent of the gross profits on all of his sales; though his subsequent testimony shows that in estimating what he claimed to be due him he did not take into account sales of sugar. He admitted that he received statements from plaintiff nearly every month purporting to show the profits on his sales and his share thereof. As to the retention by him of the $2,025 mentioned above, his testimony is to the effect, that, from the cost prices and selling prices appearing in the book furnished him, he estimated that plaintiff made an average of fifteen per cent gross profit on goods handled by it; that he estimated the profits on his total sales, however, by taking—not fifteen per cent—but twelve per cent of $108,-000, the approximate amount of his sales during the term of his employment, and figured forty-five per cent of such profits as being the total commissions earned by him; and that upon deducting from such total commissions, so computed, the total amount theretofore drawn by him on his account, there remained $2,025 due him. When asked by the court how he arrived at the 1⅞ per cent appearing in the statement mailed by him to plaintiff, he said:

" 'I sold $108,000 and I made 5¾ per cent; I made 5¾ per cent on every dollar. Forty-five per cent of the gross profits on the $108,000 would be $5,800. They only gave me $3,500, and the difference from what they paid me and what I earned was two per cent, but in order to make it sure, I cut it down to $2,025, which figures exactly 1⅞ per cent.'

"From Glassey's testimony, as well as other testimony in the case, it appears that prior to the

institution of this suit Glassey was indicted for the alleged embezzlement of the funds retained by him as aforesaid; was tried upon such charge and was acquitted. It further appears that in such criminal proceeding he was defended by counsel who below conducted the defense herein.

"One of the defendant's counsel who assisted in the trial below and who gave testimony in regard to the reasonable value of the services of plaintiff's counsel, testified, on cross-examination, that defendant had 'resisted this case at every turn in the road,' and had 'left no stone unturned in legal proceedings to defeat this claim.'

"During the cross-examination of certain witnesses for plaintiff defendant sought to elicit testimony tending to show Glassey's reputation for honesty and integrity in the community. And at the close of the testimony for the defense defendant proffered the testimony of witnesses as to Glassey's reputation for 'truth, veracity, honesty and morality.' On objections of plaintiff's counsel testimony of such character was excluded, defendant excepting.

"In rebuttal plaintiff called as a witness one Feeney, a public accountant, who testified that at the request of counsel who was then conducting the defense herein he made an audit of plaintiff's books relating to Glassey's account, five days being consumed in so doing; and that the bill rendered by the witness for such services, amounting to $150, was paid by this defendant. It appears that this was done in connection with the trial of the criminal case long prior to the institution of the present suit.

"1.    The first point made by defendant (appellant here) is that the trial court erred in excluding testimony offered pertaining to Glassey's reputation. But we think that the nature of the proceeding was not such as to put Glassey's character as such directly in issue so as to permit testimony of this nature. In Bank v. Richmond, 235 Mo. 532, it was contended that the trial court erred in refusing to permit the appellant to support a witness,

one McCallister, by proof that his general reputation for truth and veracity and honesty and fair dealing was good. The court (1. c. 542) said:

" 'The answer, in effect, charged McCallister with having made certain false representations to respondent, but that charge did not put his character in issue so as to justify the introduction in his support of general evidence of good reputation (Black v. Epstein, 221 Mo. 1. c. 305; Dudley v. McCluer, 65 Mo. 241; Cordon v. Miller, 111 Mo. App. 342), and since the averments of the answer did not put his character in issue, it follows that evidence in support of those averments would not do so. So far as the offer to prove the good reputation of the witness as to truth and veracity is concerned, it is sufficient to say that mere conflict does not warrant the admission of such evidence.'

"In this connection see also the decision of the Supreme Court in banc in Orris v. Rock Island Ry. Co., 279 Mo. 1, 214 S. W. 124. What is said in State v. Weisman, 238 Mo. 547, 141 S. W. 1108, is not here persuasive. Nor do we regard the ruling in Costello v. Kansas City, 280 Mo. 576, 219 S. W. 386, as controlling in the light of the matter there is judgment.

"We consequently rule this assignment of error against the appellant.

"2.    Defendant contends that it was prejudiced by the 'frequent and testy' remarks of the trial court during the progress of the trial, with which, it is said, the record abounds. Defendant has not pointed out, however, any specific remarks of the court claimed to have been prejudicial to it, and an examination of the record has not revealed any remarks of which we think defendant may rightfully complain.

"3.    A further contention is that since Glassey was permitted to deposit cash collections in his own account and to remit the same to plaintiff by his personal check, the relation of debtor and creditor was created by such course of dealing, and no liability could arise on the bond by reason of Glassey's failure to account for such col-

lections. This contention is obviously without merit. If Glassey wrongfully and dishonestly withheld and converted to his own use moneys of plaintiff coming into his hands in the course of the employment, defendant became liable on the bond.

"4. Finally, it is contended that the facts in evidence are not such as to warrant the assessment of any penalty as for vexatious refusal on the part of defendant to pay the loss, and that, therefore, it was error to give plaintiff's Instruction No. 1 submitting that issue, defendant citing: Aufrichtig v. Life Ins. Co., 249 S. W. 912; Non-Royalty Shoe Co. v. Phoenix Assurance Co., 277 Mo. 399, 210 S. W. 37; State ex rel. Missouri State Life Ins. Co. v. Allen, 243 S. W. 839; Cradick v. John Hancock Mutual Life Ins. Co., recently decided by this court and not as yet reported.

"In the Non-Royalty Shoe Company case, supra, while it is said that it is 'difficult, if not impossible, to frame any general rule for use in determining when a refusal to pay is vexatious and when it is not', the court quoted with approval the rule announced in Patterson v. American Ins. Co., 174 Mo. App. 37, l. c. 44 (160 S. W. 59), as follows: 'And while affirmative proof is not required to show vexatious refusal, yet the penalty should not be inflicted unless the evidence and circumstances show that such refusal was willful and without reasonable cause as the facts appeared to a reasonable and prudent man before the trial.' And this was followed in the Aufrichtig case and in State ex rel. v. Allen, supra, and in Berryman v. Southern Surety Company, 285 Mo. 379, 227 S. W. 96, and other cases as well.

"In the instant case defendant's liability *vel non* did not depend upon any mooted or unsettled question of law, as to which there might be an honest difference of opinion, entitling defendant to litigate the matter, as held in State ex. rel. v. Allen, supra, and other cases of that character. No such contention is made. Whether defendant was liable on this bond depended entirely upon the facts of the case relative to the alleged wrongful act

of plaintiff's employee in retaining moneys of plaintiff coming into his hands in the course of his employment. As to this the showing made by plaintiff from its books and records, and the testimony in connection therewith, in the absence of countervailing proof, would leave no room for doubt as to defendant's liability on the bond. And it appears that defendant had access to these books and records long prior to the institution of this suit, and had the report of the accountant, Feeney, as to what such books and records disclosed. This report was not produced at the trial, nor was Feeney examined concerning the matter; but the inference is irresistible that such report showed the status of Glassey's account to be such as shown by plaintiff's proof, and that defendant had full knowledge thereof.

"On the other hand, the testimony of Glassey, upon which defendant alone relied below, so far as concerns the merits of the case, was not, in our judgment, of such character as to present any substantial defense. As appears from the facts stated above, Glassey, having been in plaintiff's employ nearly two years, during which time he had received monthly, or, according to his testimony, nearly every month, a statement of commissions due him, and having in his hands funds collected from those to whom he had sold plaintiff's goods, retained over $2,025 thereof, arbitrarily crediting himself with that sum. We have referred to his attempted explanation of that transaction at the trial. The difficulty with it is that it does not explain. He attempted to show his right to withhold such funds by saying that, from the cost and selling prices appearing in the book furnished him, he estimated that plaintiff's gross profits would average about fifteen per cent—though he used a smaller percentage. That this was entirely unwarranted and had no tendency to show what his commissions really were readily appears from the fact that in making this estimate he took no account whatsoever of the quantity of goods which he sold of any of the various classes appearing in the book. Where the profits on a long list of various

classes of goods differ widely, it is obviously impossible to determine the profits upon sales to a given amount without classifying the goods sold and figuring the profits separately on each of the various classes.

"In view of the character of the testimony upon which the defense rested, and the fact that the evidence tends to show that long prior to the institution of the suit defendant had knowledge of the facts appearing from plaintiff's books and records touching the matter, we are of the opinion that the circumstances were such as to warrant a finding that defendant's refusal to pay was 'willful and without reasonable cause as the facts appeared to a reasonable and prudent man before the trial.' And we consequently rule that the trial court committed no error in submitting this issue.

"It follows that the judgment should be affirmed, and it is so ordered."

Relator challenges two rulings on the ground of conflict: (1) that the exclusion by the trial court of evidence pertaining to Glassey's reputation was not error; and (2) that the facts in evidence warranted the submission to the jury of whether there was a vexatious refusal to pay.

I. There are numerous decisions of this court dealing with the admissibility of evidence relating to the general character and reputation of an individual, in the trial of a civil action, when such individual occupies toward the action the relation of (a) party or (b) witness. With respect to a party we have constantly ruled that evidence concerning his general character is inadmissible, except in cases where the very nature of the action itself "puts the character in issue." [Bank v. Richmond, 235 Mo. 532; Black v. Epstein, 221 Mo. 286, 305; Dudley v. McCluer, 65 Mo. 241.] " 'Putting character in issue is a technical expression, which does not mean simply that the character may be affected, but that it is of particular importance in the suit itself, as the character of

plaintiff in an action for slander, or that of a woman in a suit for seduction.' In those excepted cases, character affects the amount of the recovery. The jury are, by law, permitted to consider it in assessing damages, and it is in that sense that it is said that 'the nature of the action puts the character in issue.' " [Dudley v. McCluer, supra, l. c. 243; Vawter v. Hultz, 112 Mo. 633.]

As to a witness, we have said: "Until the general reputation of a witness is attacked, no evidence to show his general reputation is admissible. . . . Neither the proof of mere contradictory statements, nor a rigid cross-examination of the party, will authorize the introduction of evidence as to his general reputation for truth and veracity. Such things go to the credit to be given his testimony rather than to his reputation for truth and veracity. These things do not constitute such an attack upon his general reputation as to admit evidence to support such reputation." Such was the ruling in Orris v. Railroad, 279 Mo. 1, 22. The general observations made in Costello v. Kansas City, 280 Mo. 576, 590, when read in the light of the matters there in judgment, cannot be construed as holding to the contrary.

Within the purview of the holdings just mentioned evidence of Glassey's general reputation was not admissible, whether he be regarded as a party, or merely as a witness, or both. As a party, his character was not in issue within the rule of decision just referred to; as a witness, his general reputation was in no way attacked.

Relator approaches the question from still another angle. It says that the petition in the bond suit charged, and the answer denied, that Glassey had committed the crime of embezzlement, and that thereby Glassey's character with respect to truth and honesty was put in issue. The conclusion is a *non sequitur*. Had the proceeding been criminal, instead of civil, wherein Glassey stood charged by indictment with the crime of embezzlement, his character would not have been in issue. It might have been incidently affected by the verdict, but it would not have been in issue. Evidence of the previous good

character of the defendant is received in criminal prosecutions, not because the defendant's character is put in issue thereby, but because such evidence aids in determining the intent with which the act charged as a crime was done, and that is in issue.

The bond suit seems to have been tried on the theory that the defendant's liability depended upon whether Glassey appropriated to his own use his employer's money fraudulently, that is, without any honest claim of right. If that was the correct theory, Glassey's intent was an issue in the case. The query then suggests itself: would not evidence of Glassey's previous good character have afforded material aid in determining that intent? To state it in general terms: Where the commission of a crime is the basis of a civil action, and where the act alleged to constitute the crime is a crime only in the event that it was done with a fraudulent or criminal intent, should not evidence of the previous good character of the actor be received as evidence tending to negative such intent? The question is an interesting one, but one upon which we have never passed. It follows, of course, that the ruling of the Court of Appeals viewed from this angle cannot engender conflict.

II. A casual reading of Paragraph 4 of the opinion indubitably shows that the Court of Appeals, in determining whether the evidence was sufficient to take to the jury the question of vexatious refusal to pay, invoked the general principles which this court has **Vexatious Delay.** repeatedly held should be the guide in such cases. Whether the Court of Appeals made a sound application of those principles to the facts before it is not within our province to determine. What we do say is, that we have never ruled that such, or similar, state of facts would not support a finding that a refusal to pay was vexatious.

As it does not appear that the rulings in question are in conflict with any decision of this court our writ should be quashed. It is so ordered. All concur, except *Atwood, J.,* not sitting.