NON-ROYALTY SHOE COMPANY v. PHOENIX ASSURANCE COMPANY, LIMITED, OF LONDON, ENGLAND, Appellant.

Division Two, March 17, 1919.

1. **FIRE INSURANCE: Fraudulent Appraisal: Jury Trial.** The issue of fraud in the procurement of an appraisal and award in a claim for fire insurance it not triable to the court sitting as a chancellor, but the award is so far a settlement of the cause of action as to come within the purview of Section 1812, Revised Statutes 1909, and the issue of fraud in the appraisement, made by appraisers and an umpire pursuant to the terms of the policy, is triable by the jury in an action on the policy.

2. ———: ———: **Substantial Evidence.** The evidence that the award by the appraisers was fraudulent should be substantial; and the many facts showing ignorance or carelessness or circumvention in this case were so far substantial as to authorize a submission of the issue to the jury—among other things, a discrepancy of twenty-five thousand dollars between the award by plaintiff's appraiser and the award by defendant's appraiser and the umpire, in a total alleged loss of approximately thirty-five thousand dollars.

3. ———: **Damages: Evidence: Sale Price of Salved Goods.** Evidence of the price for which the salved machines covered by the insurance were sold, while not conclusive, is some evidence of their value after they had passed through the fire.

4. ———: **Measure of Damages.** Where there has been a partial loss by fire, it is proper to instruct the jury that they should first ascertain the fair cash value of the insured porperty immediately before the fire and then the fair cash value of the property not totally destroyed immediately after the fire, and subtract the one from the other, and the difference will be the total amount of loss or damage.

5. ———: ———: **Contrary to Stipulation: Statute.** A provision in the policy that the loss or damage by fire to personal property in case of partial loss "shall in no event exceed what it would then cost the insured to repair or replace the same with material of like kind and quality" is in conflict with the statute (Sec. 7022, R. S. 1909) which requires the insurer "to pay the assured a sum of money equal to the damage done to the property or repair the same to the extent of such damage;" and consequently the provision in the policy is not the measure of damages.

6. ———: **Election to Pay or Repair.** The statute provides that (a) the insurer is to pay in money a sum equal to the damage done the property or (b) to repair the same to the extent of such damage, and the option to elect which of these two things is to be done is conferred on the assured, and not on the insurer.

7. ———: **Measure of Damages: Fraudulent Appraisal: Stipulation for Damage.** The stipulation in the policy to submit the question of damages to arbitration being set aside because of fraud in its procurement, the further stipulation that the damages in case of loss "shall in no event exceed what it would cost the insured to repair or replace the same with material of like kind and quality" is likewise void, and the measure of damages is that fixed by the statute. But if the award of the appraisers is not set aside, the instruction should use the stipulation as the measure of damages.

8. ———: **Vexatious Delay: Verdict.** There should either be a general verdict assessing both the penalty and the attorney's fee mentioned in the statute, or there should be an affirmative finding that the refusal to pay was in fact vexatious.

9. ———: ———: **Substantial Evidence.** A verdict for attorney's fees bottomed upon an alleged vexatious refusal to pay the loss done by the fire must be based upon substantial evidence of such refusal or delay. It cannot be deduced from the mere fact that upon suit the verdict is adverse to the company. A general rule for determining when a refusal to pay is vexatious is not easliy formulated, yet before the penalty can be imposed the

facts must show that the refusal was wilful and without reasonable cause.

10. **CONSTITUTIONAL QUESTION:** Section 7068: Refusal to Consider. If the Supreme Court has once determined the precise constitutional question raised in a case wherein the Court of Appeals would otherwise, absent such question, have jurisdiction, it will not thereafter, on account of such mooted question, assume jurisdiction of a case appealed after such decision was made. And for a like reason, on principle, the court, havng twice, before this case was appealed, held Section 7068, Revised Statutes 1909, pertaining to penalties and attorney's fee for vexatious refusal to pay a fire insurance policy, to be constitutional, refuses to open the question.

Appeal from Pike Circuit Court.—*Hon. Edgar B. Woolfolk*, Judge.

AFFIRMED AFTER REMITTITUR FILED.

*Reynolds & Harlan* and *Hosetter & Haley* for appellant.

(1)   Sec. 7068, R. S. 1909, is unconstitutional as denying to the insurance companies penalized thereunder the equal protection of the law, and as depriving said insurance companies of their property without due process of law, and is not a proper classification, under the Constitution of Missouri or of the United States. Paddock v. Railroad, 155 Mo. 524; Gulf, etc., Railroad v. Ellis, 165 U. S. 150; West v. Railroad, 118 Mo. App. 432; Williamson v. Liverpool Insurance Co., 105 Fed. 31; St. Louis v. Wynne, 224 U. S. 354; Oligschlager v. Stephenson, 104 Pac. 345; Connolly v. Union Sewer Pipe Co., 184 U. S. 540; Wilder v. Railroad Co., 70 Mich. 382; Railroad v. Polt, 232 U. S. 165.   (2)   The fact that the Supreme Court in Keller v. Home Life Insurance Co., 198 Mo. 440, held the statute in question to be constitutional does not forever oust this court of its jurisdiction to determine that question, as it is still a fairly debatable one, and the decisions of the State and United States Supreme Courts on similar statutes are in great confusion, with frequent dissent-

277 Mo.—26

ing opinions. Littlefield v. Littlefield, 168 S. W. 841; Ash v. City, 145 Mo. 120; Hilgert v. Paving Co., 173 Mo. 319; Brown v. Railway, 175 Mo. 185; State ex rel. v. Smith, 177 Mo. 69. (3) While the courts of this State have held that formal affimative proof of vexatious delay in paying an insurance loss is not required, such delay, to justify the infliction of a penalty, must have been wilful, and without reasonable cause, and this question of wilfulness will not be determined by the outcome of things at the trial, but by the appearance before the trial as judged by a reasonable and prudent man seeking to ascertain the fact as duty would require. Blackwell v. American Central Insurance Co., 80 Mo. App. 75; Patterson v. American Ins. Co., 174 Mo. App. 37; Utz v. Insurance Co., 139 Mo. App. 153; Corson v. Neatheny, 9 Colo. 212; Empire Life Ins. Co. v. Allen, 81 S. E. (Ga.) 120. (4) The appraisal and award provisions of the policy have been repeatedly held to be valid and binding on the parties, and a condition precedant to the liability of the defendant unless waived. Townsend v. Insurance Co., 39 Misc. (N. Y.) 87; Murphy v. Insurance Co., 61 Mo. App. 323; McNees v. Insurance Co., 61 Mo. App. 335; McNees v. Insurance Company, 69 Mo. 232; Carp v. Queen Insurance Co., 104 Mo. App. 502; Paint Co. v. Insurance Co., 165 Mo. App. 30; Stevens v. Insurance Co., 120 Mo. App. 89; Fire Association v. Allesina, 45 Ore. 154; Chippewa Lumber Co. v. Insurance Co., 80 Mich. 116. (5) And before evidence can be introduced to impeach such an award, the party attacking it must assert facts which, if true, will declare said award void; or, if the facts relied on to impeach it be such as to render it voidable only, then it must be set aside in equity for fraud or mistake, before suit can be maintained on the policy. Robertson v. Insurance Co., 68 Fed. 173; Ruckman v. Ransom, 35 N. J. L. 565; Perry v. O'Neil & Co., 78 Ohio St. 200; Blair v. Railroad, 89 Mo. 383; Girard v. Car Wheel Co., 123 Mo. 358; Homuth v. Street Railway, 129 Mo. 629; Och v.

Railroad, 130 Mo. 27; Hancock v. Blackwell, 139 Mo. 440; Courtney v. Blackwell, 150 Mo. 545; Yeatman v. Clemens, 6 Mo. App. 210; Kaufman v. Railway Co., 95 Mo. App. 459; Turner v. Railroad, 114 Mo. App. 539; Magnuson v. Casualty Co., 125 Mo. App. 206. (6) But whether attacked at law or in equity, the proceedings of the appraisers and the umpire in a proceeding under a policy of this kind are not to be judged by the strict rules applicable to arbitration and award; they are not required to hear evidence or hold formal sessions, but it is enough if they proceed in good faith under the terms of the submission, and the award cannot be avoided for mere irregularities. American Steel Co. v. Insurance Co., 187 Fed. 733; Whalen v. Goldman, 115 N. Y. Supp. 1006; Paint Co. v. Insurance Company, 165 Mo. App. 30; Michels v. Underwriters' Association, 129 Mich. 417; Barnard v. Insurance Company, 101 Fed. 36; Remington v. Insurance Corp., 12 N. Y. App. Div. 218; Aetna Insurance Co. v. Reed, 33 Ohio St. 283; Ordway v. Insurance Co., 35 Mo. App. 426; Indiana Insurance Co. v. Brehm, 88 Ind. 578; Georgia Home Insurance Co. v. Worten, 113 Ala. 479; Sebree v. Board of Education, 254 Ill. 438. (7) It is competent for an insurance company and the assured to fix the measure of damages in case of loss or damage by fire, and when they do agree upon a method of determining the loss, that method will control. The measure of damages fixed by the terms of this policy is limited to the cost to respondent to repair or replace the property mentioned in the policy and found from the evidence to have been lost or destroyed, with materials of like kind and quality. This provision in the policy has been repeatedly held valid. Cooley's Insurance Briefs, p. 3085; Machine Co. v. Insurance Co., 201 Pa. St. 645; Malin v. Insurance Co., 105 Mo. App. 625; Chippewa Lumber Co. v. Insurance Co., 80 Mich. 116; Commonwealth Ins. Co. v. Sennett, 37 Pa. St. 205; Sun Fire Office v. Ayerst, 37 Neb. 184; Lipman v. Liability Assur. Corp., 170 Ill. App. 379; Burdette v. Insurance Co., 105 Tenn. 548;

Miller v. Insurance Co., 95 Mo. App. 211; Insurance Company v. Board of Education, 49 W. Va. 360; Plow Company v. Insurance Company, 39 Tex. Civ. App. 168; Kerr on Insurance, p. 435; Insurance Company v. Allen, 80 Ala., 571; Brinley v. Insurance Co., 11 Metc. (Mass.) 195; Insurance Co. v. Hamilton, 5 Md. 170; Williamson v. Insurance Company, 122 Fed. 59.

· *Virgil Rule* and *Fauntleroy, Cullen & Hay* for respondent.

(1)   The case of Young v. Pennsylvania Fire Insurance Co., 269 Mo. 1, was decided since this case was argued in the Court of Appeals and since the decision was delivered by that court.   In every particular the facts in the Young case are substantially similar to the facts in this, the Young case involving an award by appraisers, an attack upon the award and the appraisers along the same general lines as the attack in this case.   Attorneys' fees were allowed in the Young case for vexatious delay and we respectfully submit that the Young case is on all-fours with the case at bar and decides every point presented by the appellant in this case adversely to it. (2) The award is voidable and may be attacked in an action at law. (a) While appraisers may not always be required to take evidence as to the damage to property visible and open to their inspection, but as to property wholly destroyed or not so visible and open to inspection, appraisers necessarily act upon evidence, and both the insured and the company should be allowed to offer evidence and receive notice of time and place of hearing, and a refusal in such case to head evidence, or to take evidence secretly and without notice, vitiates the award.   Jones v. Orient Ins.   Co., 171 S. W. 28;   Stout v. Phoenix Assur. Co. of London, 56 Atl. Rep. 681;   Kaiser v. Hamburg-Bremen Fire Ins. Co. of Hamburg & Bremen, 69 N. Y. Supp. 344;   Citizens Ins. Co. of Pittsburg v. Hamilton, 48 Ill. App. 593;   Continental Ins. Co.

v. Garrett, 125 Fed. 589; Stemmer v. Scottish Ins. Co., 33 Ore. 65; Bangor Savings Bank v. Niagara Ins. Co., 85 Me. 68; Redner v. N. Y. Fire Ins. Co., 92 Minn. 306. (b) The award is void because the appraisers were partial and not disinterested; the company's adjuster secured the appointment of its appraiser, the umpire, by fraudulent misrepresentations and suppression, because the umpire and company's appraiser exceeded his jurisdiction and the appraisers adopted a wrong rule of law and were not qualified to assess values and were professional insurance appraisers, and the award was so inadequate as to shock the consience of fair-minded men. Pierce v. Sun Ins. Office, 147 N. Y. Supp. 947; Bradshaw v. Insurance Co., 137 N. Y. 137; Hall v. Western Assur. Co., 133 Ala. 637; Bernhard v. Rochester German Ins. Co., 79 Conn. 388; Jerrells v. German-American Ins. Co., 82 Kan. 320; Savings Assn. v. Insurance Co., 87 N. Y. Supp. 1075; Van Gindertalen v. Insurance Co., 82 Wis. 112; Traub v. Insurance Co., 83 Md. 524; Insurance Co. v. Traub, 83 Md. 524; Perry v. Insurance Co., 137 N. C. 402; Baker v. Assur. Co., 57 Mo. App. 564; Bartless v. Exchange, 116 Wis. 450; Hoffman v. Insurance Co., 1 La. Ann. 216; Insurance Co. v. Taylor, 14 Colo. 499; Insurance Co. v. Johnson, 11 Bush. 587; Bradley v. Northwestern Ins. Co., 11 Mich. (7 Cooly) 455. (c) An appraisement under an insurance policy is not an arbitration, but merely a method, when not waived, for determining a link, that is, the amount of loss, in the chain of evidence necessary to sustain plaintiff's cause of action on the policy. It does not merge the prior cause of action on the policy into the award, but is merely a method of determining the amount of loss. But this can be waived, or when not properly arrived at, the insured is allowed to prove it, as any other fact, when suit is brought on the policy. Young v. Ins. Co., 269 Mo. 1; Zalle v. Laclede Mutual Fire Ins. Co., 44 Mo. 530. (d) The term "settlement" as used in the statute does not necessarily mean payment or satisfaction, though it may mean that. It frequently means

adjustment, arrangement. A "settlement" is a contract between two parties by means of which they ascertain the state of the accounts between them and strike a balance. Young v. Insurance Co., 269 Mo. 1; Toombs v. Stockwell, 131 Mich. 633; Beall v. Hudson County Water Co., 185 Fed. 179.. (3) The contention of appellant that error was committed by the court in giving instructions on the measure of damages is unsound. (a) The opinion of the Court of Appeals, holding that the provisions of the policy limiting the recovery to the cost of replacement is not in conflict with the statute which imposes upon the plaintiff the duty of paying a sum of money equal to the damage done to the property, is in direct conflict with the terms of the statute. R. S. 1909, secs. 7022 and 7023; Ritchey v. Home Ins. Co., 104 Mo. App. 150; Havens v. Insurance Co., 123 Mo. 403, 26 L. R. A. 107, 45 Am St. 570; Sharp v. Insurance Co., 184 Mo. App. 486; Christian v. Insurance Co., 143 Mo. 460; Alsop Process Co. v. Continental Ins. Co., 175 Mo. App. 317; James Branigan v. Insurance Co., 102 Mo. App. 70; Chippewa Lumber Co. v. Phoenix Ins. Co., 80 Mich. 116. The statute imposes upon the insurance company the obligation to "pay the assured a sum of money equal to the damage done to the property not exceeding the amount written in the policy. The policy provision is in direct conflict with the statute. (b) The proviso as to the cost of repair is not the exclusive measure of damages and such proviso must be put in issue by being specially pleaded by the defendant. Western Insurance Co. of Toronto v. J. H. Mohlman Co., 83 Fed. 811; Freeman v. Insurance Co., 144 Mass. 572; Mechanics' Ins. Co. v. Hoover Distilling Co., 182 Fed. 591; Brown v. Patterson, 224 Mo. 639. (c) The proof in the case at bar established that plaintiff was a manufacturer using a class of goods to which the doctrine of repair and replacement is never applied, and the machinery damaged and destroyed was imported from foreign countries and could not be repaired or replaced. Mechanics' Ins. Co. v. Hoover Distilling Co., 182 Fed.

595; Farmers' Bank v. Manchester Assur. Co., 106 Mo. App. 114; Port Blakely Mill Co. v. Hartford Fire Ins. Co., 50 Wash. 657; Aetna Ins. Co. v. McLead, 57 Kan. 95, 57 Am. St. 320; Sutherland v. Ins. Co., 87 Iowa 505; Frick v. United Firemen's Ins. Co., 218 Pa. 409; Mitchell v. St. Paul German Fire Ins. Co., 92 Mich. 594. (d) The instruction given as applied to the facts proved in this case announces a correct rule, independent of our statute. Jackson v. British American Assurance Co., 106 Mich. 47, 30 L. R. A. 636; Rissler v. Insurance Co., 150 Mo. 366; Brookshier v. Insurance Co., 91 Mo. App. 599; McIntyre v. Insurance Co., 131 Mo. App. 94; Sharp v. Insurance Co., 164 Mo. App. 487; St. John v. Insurance Co., 107 Mo. App. 703. (4) The jury found that the refusal to pay was vexatious. The suggestion advanced by appellant that the verdict for attorney's fees cannot be sustained without a technical express finding of vexatious delay, is not involved in this case, and should not be considered for the reason that the jury were instructed that before they could find either damages or attorney's fees, they should find that the company "has vexatiously refused to pay such loss." No complaint relating to this point is set up in the motion for a new trial. K. C. Disinfecting Co. v. Bates Co., 201 S. W. 93. The form of verdict given by the court to the jury also makes it plain that the jury were fully advised that they could not allow either damages or attorney's fees unless they believed the company was guilty of vexatious refusal to pay. (5) The evidence was ample to prove a vexatious refusal to pay. The evidence tended to show want of good faith in the defense, tended to prove that the company had connived at fraud and adopted a fraudulent appraisal and tried to force a settlement at a sum less than the amount due, and hence the refusal to pay was vexatious within the meaning of the law. Young v. Penn. Ins. Co., 269 Mo. 1; Gillispie v. Insurance Co., 168 Mo. App. 323; Stix v. Insurance Co., 175 Mo. App. 171; Williams v. Insurance Co., 189 Mo. 71; Keller v.

Insurance Co., 198 Mo. 460; Cox v. Insurance Co., 154 Mo. App. 464; Leahman v. Insurance Co., 183 Mo. App. 696.

FARIS, J.—This is an action on a contract of insurance for a loss sustained by fire. Jurisdiction herein by reason of the amount involved lay originally in the St. Louis Court of Appeals, but that learned court, after filing an opinion reversing and remanding it for errors, certified it up to us, because REYNOLDS, P. J., deemed the holding in the opinion, upon the point of allowing an attorney's fee as damages for an alleged vexatious refusal to pay the loss, in conflict with the decisions both of the Kansas City Court of Appeals and of this court.

The facts of the case, so far as concern the pleadings and issues, are carefully and clearly stated by the Court of Appeals, thus:

"This is an action on one of eleven policies insuring the plaintiff for one year against all direct loss or damage by fire, the total amount of insurance being $28,500, the amount carried by plaintiff in the defendant company, $3000. The property insured was personal property, machinery, power appliances, etc., contained in and on the brick building occupied by plaintiff and situated in the City of St. Louis. Insurance in companies other than the defendant is permitted in the policy. Alleging the total loss of all the property insured, in the amount of at least $31,981.32, plaintiff asked judgement against defendant in the sum of $3000 with six per cent interest, and for reasonable attorney's fees and ten per cent damages for vexatious refusal to pay, as provided by statute.

"The answer, admitting the execution and delivery of the policy, sets up a provision in it that the company 'shall not be liable beyond the actual cash value of the property at the time any loss or damage occurs, and the loss or damage shall be ascertained or estimated according to such actual cash value, with proper

deduction for depreciation, however caused, and shall in no event exceed what it would then cost the insured to repair or replace the same with material of like kind and quality; said ascertainment or estimate shall be made by the insured and this company, or, if they differ, then by appraiser, as hereinafter provided; and, the amount of loss or damage having been thus determined, the sum for which this company is liable pursuant to this policy shall be payable sixty days after due notice, ascertainment, estimate and satisfactory proof of the loss have been received by this company in accordance with the terms of this policy.'

"It is further provided that in the event of the disagreement as to the amount of loss, it shall 'as above provided,' be ascertained by two competent and disinterested appraisers, each party selecting one, and the two so chosen, first selecting a competent and disinterested umpire, the appraisers together shall then estimate and appraise the loss, stating separately sound value and damage, and failing to agree, shall submit their differences to the umpire, and the award in writing of any two shall determine the amount of such loss, each party paying the appraiser respectively selected by them and bearing equally the expense of the appraisal and umpire; it being further provided that 'the loss shall not become payable until sixty days after the notice, ascertainment, estimate and satisfactory proof of the loss herein required have been received by this company, including an award by appraisers where appraisal has been required,' and that the insuring company shall not be liable under the policy for a greater proportion of any loss on the described property, or for loss by and expense of removal from premises endangered by fire, than the amount insured shall bear to the whole insurance. The answer, setting up these clauses in the policy, avers that, after the occurrence of the fire, plaintiff and defendant entered into an agreement for submission to appraisers, the agreement dated March 24, 1913; that under this agreement William

Fay and Chester T. Drake were appointed appraisers; that they selected Fred E. Briner as umpire; that Fay and Drake qualified as appraisers and Briner as umpire and proceeded to and did estimate and appraise the loss caused by the fire, stating separately sound value and damage in conformity with the provisions of the policy, and on April 7, 1913, made their award in writing, placing the sound value of the property at $34,732.80, and the loss and damage at $9547.08. Claiming that this fixed the amount of the total loss, and as the total amount of insurance was $28,500, it is averred that the amount due under this policy by this defendant was $1004.95, which sum, it is averred, defendant has always been ready and willing to pay, but that plaintiff, notwithstanding the agreement above set out, had failed and refused to receive that sum, and which sum defendant now, by its answer, again tenders.

"The reply, taking issue on the amount of the loss, admits the stipulations in the policy set out, but denies that pursuant to the provisions of the policy plaintiff and defendant entered into an agreement for submission on appraisers as set forth in the answer, and alleges that under the provisions of the policy plaintiff and defendant undertook to have the loss and damage fixed as hereinafter stated and as provided in the policy. It is then averred that after the fire and loss a disagreement arose between plaintiff and defendant as to the amount of loss and that under the terms of the policy plaintiff selected Fay, a competent and disinterested person, as appraiser, to act for it, and defendant selected Drake, and these two selected Briner, as umpire, but it denies that either Drake or Briner were competent or disinterested or unbiased, alleging the contrary, specifically alleging that Briner was ignorant, inexperienced and incompetent. It further denies that either Fray or Drake or Briner, or any of them, ever correctly or fairly estimated or appraised the loss caused by the fire to the property; denies the award was made in writing oo April 7, 1913, or at any time, and denied that

by any award made, the total amount of loss caused by the fire was only $9547.08; avers that after these appraisers and umpire had been selected and started in to investigate and appraise the loss, and that after they had been at work for some time, Fay was of the opinion, and so declared to Drake and Briner, that the sound value of the property was $35,981.65, and that the amount of loss and damage which was directly caused to the insured property by the fire was at least $28,904.72, but that defendant's appraiser Drake and umpire Briner wrongfully, fraudulently and illegally proceeded and together pretended to come to an award in which they pretended to fix the loss at $9547.08, which award Fay refused to sign or agree to. It is further alleged that Drake and Briner failed to take into consideration a large amount of property lost, which was of the value of $1800 and of which the appraiser Drake and the umpire Briner were notified by Fay, but which they excluded from any award. Repeating the charges of the incompetency, unfairness and partiality of Briner and Drake and alleging, among other things, that Briner had consulted his own attorney and outside parties, and averring that in arriving at their conclusion neither Briner nor Drake ever ascertained, or knew, or were able or competent to know or to find, nor did either of them ever exercise any independent judgment or opinion as to what loss and damage was occasioned by the fire, but they 'guessed' at the amount of loss and damage; had taken opinions thereon, secretly and privately given by parties and attorneys who were not informed in regard to the matters and who were unknown to plaintiff, and before whom plaintiff was unable to appear. Hence it is alleged that the pretended award, by reason of these facts, was wholly inadequate and insufficient to express or cover the amount of loss and damage which plaintiff suffered by reason of the fire having damaged the insured property, and that this loss was never ascertained by any competent or disinterested appraiser or umpire and was never ascertained or known by

either Drake or Briner, and that by reason of these facts, and of the facts before alleged, plaintiff alleges that the plaintiff's award is void and of no effect.

"It is further averred that neither Drake nor Briner notified or permitted Fay or plaintiff to know the parties from whom they were seeking private advice, and upon whose opinion they were acting in the matter so that this plaintiff could, as it would have done, have proven by competent and disinterested parties, that the loss which was occasioned to the property was the amount stated in the petition.

"The cause was tried before the court and a jury and resulted in a verdict for plaintiff, vacating the award and assessing the damage for loss sustained on the policy in the sum of $2,829, with interest in the amount of $74.95, and attorney's fee for services in this action in the sum of $500."

So far as the facts shown upon the trial are concerned, it is enough to say that the evidence offered by plaintiff tended to prove the allegations of the petition and the reply; while that offered by the defendant tended to prove the allegations of the answer and to contradict the evidence offered on plaintiff's part. Further facts will be found in the opinion of the Court of Appeals (Non-Royalty Shoe Co. v. Phoenix Assurance Co., 178 S. W. 246), and if necessary we shall refer in our discussion to any additional matters which are pertinent.

I. Many grounds of alleged error are called to our attention by defendant. Such of these as under the view which we take of the case, demand discussion are: (a) That the issue of fraud in the procurement of the appraisal and award was triable to the court sitting as a chancellor and not to a jury; (b) that there was no substantial evidence upon which to set aside the appraisal, and that the finding of the jury upon this question was erroneous; (c) that error occured in giving certain instructions for plaintiff and

in refusing certain instructions offered by defendant upon the measure of damages; (d) that there was no substantial proof of vexatious refusal to pay the loss, therefore an allowance of an attorney's fee upon this ground was error, and (e) that the statute permitting an award of damages for vexatious refusal to pay a loss upon a contract of insurance is unconstitutional and void.

II.   The contention that the issue of fraud in the award of the appraisers is to be tried by the court sitting   as a chancellor and not by a jury is in the opinion of the writer a serious and interest-
Issue of        ing one. It is obvious, however, that a solu-
Fraud:
Jury Trial.   tion of it involves only the construction of Section 1812, Revised Statutes 1909.   For the rule for which defendant contends was unquestionably the law before Section 1812 was passed. [Hancock v. Blackwell, 139 Mo. 440.] If the provisions of Section 1812 are applicable to an appraisement made by appraisers and an umpire pursuant to the terms of a policy of insurance (or, as here, pursuant to an agreement to so submit the question of amount of loss incurred), then the above action settles the point. Division One of this court very recently gave the most careful consideration to this question and upon the view that such an award is a settlement, and also, a release, at least in part, of the cause of action, it was ruled that Section 1812 is applicable. [Young v. Insurance Co., 269 Mo. 1.] Passing the thought that such an award of appraisers is not always a release in part (e. g., when the appraisers find that the loss equals the full amount of the policy, and the company should for fraud seek annulment), we are disposed to agree with the view that such an award is so far a settlement as to come within the purview of said Section 1812. [35 Cyc. 1443.] Moreover, no good is accomplished by a constant change in the rulings upon questions of practice.   The reason given in the Young case are

plausible and the conclusion reached therein is wholesome; therefore, and since we see no compelling reason why we should unsettle the rule, we disallow this contention of defendant.

III. Another close and serious question is presented by the contention that there was no substantial evidence whatever of the existence of such fraud as would avoid the award. Divers shreds and patches of evidence are urged as making up the requisite quantum of proof to constitute substantial evidence. Among these are (1) the fact that the umpire was selected by flipping a coin, (2) that the appraiser for defendant resided in Chicago, where for a period of some twenty years, he had occasionally acted as an appraiser for the defendant, (3) that the umpire privately took legal advice as to his acts and duties and the law under which he should proceed, (4) that the umpire privately consulted an engineer as to matters of damage and values, (5) that the umpire refused to disclose to the appraisers the names of these persons so secretly consulted by him, (6) that the appraiser for defendant and the umpire refused to take into consideration in reaching the value of the damaged machines the cost of the installation thereof, or the cost of wiring the building for electricity, and (7) that the discrepancy between the amount of loss and damage as found by the appraisers for defendant and the umpire and the actual damage and loss as found by the plaintiff's appraiser and witnesses for plaintiff is of itself substantial evidence of fraud. Upon the last of these several contentions there was much proof adduced *pro* and *con* by the respective parties; the others were either admitted or proved conclusively.

If the case were one sounding in equity we might hesitate to agree that the evidence adduced is sufficient. But we are of the opinion that there was substantial evidence from which unbiased jurors could draw inferences to sustain the charge of fraud. The triers of

fact might well have deduced such an inference from the discrepancy between the appraisers as to damage and loss alone. For it is almost incredible that impartial men at all acquainted with machines and machinery should differ so widely in opinion and in testimony as the record shows was the case here. The obvious inference to be deduced from these facts is that the appraisement was either the result of prejudice and overreaching, or it was begotten of carelessness, or the most stupendous ignorance. A difference of a few thousand dollars in a total of an alleged loss of approximately thirty-five thousand dollars might be expected, but a difference of more than twenty-five thousand dollars in the respective figures is seemingly incompatible with impartiality and argues inferentially in favor of carelessness, circumvention or ignorance. We do not know and we are not saying on which side the truth lies. Whether the view taken by Fay and in consequence his testimony are the correct and true view and testimony, or whether in these behalves verity attaches to Drake and Briner, we cannot say and do not say. But nothing is clearer than that one side or the other has grieviously erred. Carelessness, or ignorance, we think, which (to take *arguendo* the view which favors plaintiff) entailed a loss of twenty-five thousand dollars upon the latter would of itself constitute such constructive fraud as to justify relief. The evidence adduced upon the trial both by plaintiff and defendant touching the condition of the machinery, seems upon the cold record to be "fair upon its face." But the fact remains that the colossal discrepancy in the figures indicates a condition wholly in conflict with any theory of verity, or fair dealing attributable simultaneously to both sides. These obvious conclusions arise as inferences, which we think were for the triers of fact (Knorpp v. Wagner, 195 Mo. l. c. 662; State ex rel. v. Elliott, 157 Mo. l. c. 618); and when considered in connection with the other charges noted

(which were conceded in effect), made a jury question of this point.

IV.   Cognate to this question of the sufficiency of the evidence, is the point vaguely raised in the briefs that evidence of the price for which the whole of the salved machines and machinery was sold was inadmissible upon the question of their value after they had passed through this fire. We think that this contention must be overruled. While evidence of this sort when standing alone is in the last analysis merely an opinion of value deduced from the act of another in a situation wherein the compelling reasons for that act are unknown and undisclosed and which reasons may be ascribable to facts utterly foreign to the issuable fact of actual value; yet such testimony, while not conclusive, is ordinarily some evidence of value. [2 Sutherland on Damages, 1453.] Cases can be conceived wherein from the very nature of the commodity, no other sort of evidence of value is available. [Brinkerhoff-Farris Trust Co. v. Lumber Co., 118 Mo. 447; State ex rel. v. Dickson, 213 Mo. l. c. 101.] In explanation of the price brought by these salved machines when thus sold, the defendant was, of course, entitled to show, if it could, that these machines were of a sort for which the demand was negligible whether they were damaged or sound, or indeed, any other fact which might have affected the price for which the machines were sold.

*Sale Price of Salved Machines.*

V.   Upon the question of the measure of damages under the policy a serious contention is made. For the plaintiff, on the measure of damages, the trial court gave this instruction, to-wit: "If under the evidence and Instruction No. 1, the jury concludes to disregard the award returned by Drake and Briner and concludes to find a verdict for plaintiff in excess of said award, then, in estimating the amount of loss and damage for the loss sustained un-

*Measure of Damages.*

der the policy you should first ascertain from all the facts and circumstances given in evidence the fair cash value of the insured property immediately before the fire, and then from the evidence you should ascertain the fair cash value of the property not totally destroyed immediately after the fire and from the value before the fire subtract the value after the fire and the difference will be the total amount of loss and damage sustained.''

The jury did see fit to set aside and disregard the appraisement of the arbitrators as instruction one (referred to in the instruction copied above) advised them they were authorized to do if they found the facts upon which instruction one was hypothesized. Defendant urgently insists that the above instruction is erroneous for that the measure of damages therein set forth is incorrect. And this is so, says defendant, because the policy of insurance sued on here provides, touching the measure of damages, thus:

''This company shall not be liable beyond the actual cash value of the property at the time any loss or damage occurs and the loss or damage shall be ascertained or estimated according to such actual cash value with proper deductions for depreciation, however caused, and shall in no event exceed what it would then cost the insured to repair or replace the same with material of like kind and quality.''

Plaintiff's answer to this suggestion of error is that the above provision of the policy is in conflict with our statute, Section 7022, Revised Statutes 1909, and that being so in conflict the provision of the policy must yield to the provisions of the statute. The statute relied on reads thus:

''Whenever there is a partial destruction or damage to property covered by insurance, it shall be the duty of the party writing the policies to pay the assured a sum of money equal to the damage done to the property or repair the same to the extent of such damage, not exceeding the amount written in the policy, so that said

property shall be in as good condition as before the fire, at the option of the insured." [Sec. 7022, R. S. 1909.]

We think there is a conflict between the statute and the terms of the policy, so far as concerns the application of the statute here contended for by defendant. For it will be noted that Section 7022, supra, provides that the insurer, in case of a partial loss (and this was a partial loss, only) shall pay to the assured a sum of money equal to the damage done to the property by the fire, or repair the damage, so that the property shall be in as good condition after the fire as it was before the fire. There are therefore ·in this statute two alternative duties, which are, either (a) to pay in money a sum equal to the damage done to the property, or (b) to repair the property in such wise as to restore it to the condition it was in before the fire. It is to be noted that this statute does not require the assured either to repair or to accept from the insurer money with which to repair, but *it requires the insurer to repair*. Nor does the option to elect which one of these things shall be done rest with the insurer, but on the contrary this option of election is plainly conferred on the assured. [Branigan v. Insurance Co., 102 Mo. App. 70.] It is true that in the instant case the assured stipulated in the agreement to submit the question of damages to arbitration, that the measure of its damages should be computable pursuant to the terms of the policy. That is, to quote from this stipulation, that the damages "shall in no event exceed what it would then cost the insured to repair or replace the same with material of like kind and quality." If this stipulation be binding upon the plaintiff, even if the agreement to arbitrate be found void for 'fraud, then of course it would constitute an election on plaintiff's part of the statutory duty · of the insurer to repair. But we do not think the agreement can be void as to the arbitration and valid as to this stipulation. Such a view would seem wholly to preclude the maintenance

of any action at all upon the policy, and confine this suit to a mere setting aside of the award and thereafter relegate plaintiff to another arbitration. It is obvious that if the agreement to arbitrate and the arbitration had thereunder, should not be set aside, no reason exists why any instruction of any sort on the measure of damages should be given. For a majority of the arbitrators acting under the agreement to arbitrate, and the stipulation therein that the cost to repair should be the measure of damages, found the total damages to plaintiff were $9547.08, while the minority, proceeding upon the theory of compensation in money for actual damage done, fixed these damages at approximately $35,000. Be this as may be, so far as concerns the matter of instructions on the measure of damages, the instructions given became pertinent after the jury had found in favor of setting aside the arbitration.

The books are full of cases which hold that a contract of insurance, which fixes the measure of damages in case of loss at the cost of repairing the damaged property, is enforceable pursuant to its terms. But such cases merely construe the provision of the policy, unmodified by a statute such as ours (Sec. 7022, supra), which, lacking an election by the assured to have repairs made, renders the policy provision inapplicable. [Branigan v. Insurance Co., 102 Mo. App. 70.] While it is somewhat novel to apply the partial-loss statute to a fire-damage on personal property, neither reason nor authority has been called to our attention forbidding such application, nor have we been able to find any such after a somewhat careful search. We are of the opinion therefore that this contention of defendant should be disallowed.

The converse of this whole question is presented upon a consideration of instruction numbered 13, which the court below gave for the defendant. This latter instruction, *following the terms of the policy and the stipulation in the agreement to arbitrate,* fixed the

measure of damages at the cost of repairing the damaged machines. Clearly, if the award of the arbitrators should be upheld, then the stipulation contained therein that the cost of repairs should constitute the measure of damages is valid and binding, and in such event, if any instruction upon the measure of damages be. necessary or enlightening, the one given for defendant would not be improper; provided, there were antecedently postulated, apt recitals to the effect that the jury should not apply the measure of damages recited in the instruction, save in the event of upholding the award of the arbitrators. Absent such a recital obviously defendant's instruction 13 is in conflict with plaintiff's instruction two.

VI. This brings us to the question whether there were any sufficient facts shown in evidence to warrant the verdict for attorneys' fees bottomed upon an alleged vexatious refusal to pay the loss. Ancillary to this point are the cognate questions whether under the statute (Sec. 7068, R. S. 1909) there must be (1) an express affirmative finding by the jury in their verdict that the refusal to pay was vexatious, and (2) whether the jury is allowed by the statute, supra, to assess an attorney's fee on the ground of a vexatious refusal to pay the loss, unless they also assess the ten per cent penalty likewise permissible upon the finding of a vexatious refusal to pay. In this case the jury neither affirmatively found that there was a vexatious refusal to pay, nor did they assess the permissible ten per cent damages. They merely stated in their verdict, without more, that plaintiff was entitled to an attorney's fee of $500, without setting forth upon what ground they based such finding.

This is a penal—indeed a *highly* penal—statute, and so it ought to be strictly construed. No one ought to be allowed to profit by it unless he brings himself strictly within the letter of its provisions. While for other reasons which readily suggest themselves, we ap-

prehend that defendant could not bottom reversible error upon the single fact that the jury had not seen fit to assess against it the permissible penalty of ten per cent damages; yet in the statute the penalty and the attorney's fee are connected by the conjunctive and not the disjunctive. This interlinking, and the fact that the statute is highly penal, leads to the conclusion that there ought to be an unambiguous finding of the fact of vexatious refusal to pay the loss before the infliction of either penalty should be permitted to stand. Either there should be a general verdict assessing *both* the penalty *and* the attorney's fee, or there should be an affirmative finding that the refusal to pay was in fact vexatious. While, as we suggest above, it is technical error to assess one penalty without the other, the error is in favor of defendant and against plaintiff, and defendant may not complain. If the wind is to be tempered to the shorn lamb, however, the lamb ought to be advised that the temperature has risen merely as an act of grace, and not of merit. Some such view seems to have been held by the learned Kansas City Court of Appeals (Strawbridge v. Insurance Co., 193 Mo. App. l. c. 693), though in the end that case rode off on another point.

But these considerations while important (since for error the case must be tried again), are yet afield from the point most strenuously urged, which is, to-wit: Was there any substantial evidence of a vexatious refusal to pay this loss? We are of the opinion that there was not. One fact alone, which is not disputed, is decisive of this question. The policy is apparently of the standard form, and in common with contracts of this sort provided that "the loss shall not become payable until sixty days after the notice, ascertainment, estimate and satisfactory proof of the loss herein required have been received by this company, including an award by appraisers when appraisal has been required." The appraisal was agreed to by a stipulation in writing, so the question whether Section 868,

Revised Statutes 1909, has, or has not "killed" the clause in the policy (Young v. Insurance Co., supra), which provides for appraisal, is not involved in this case. This appraisal was completed and filed on the 7th day of April, and on the 28th day of April next thereafter, only 21 days after the appraisal was completed, this action was commenced. There was, it is true, a sharp dispute over the amount payable as damages for the loss accruing, but defendant in its answer admitted that a loss had accrued and admitted its lability to pay such loss, and tendered by answer the amount it believed such loss to have been, and averred its continuing willingness to pay such sum. During the interim of 21 days, defendant, it is to be inferred, was relying upon the correctness of the appraisal and was (as it pleaded, without serious contradiction upon the trial) ready and willing to pay without delay the full sum of such award. But plaintiff was not willing to accept this amount. Nevertheless, it did not see fit to investigate the reasons underlying the attitude of the umpire Briner, as that attitude was foreshadowed by his figures upon the appraisement, but assuming that he was hostile and prejudiced, neglected or refused to consult him, and brought suit without any apparent effort to adjust the dispute.

We are convinced that a vexatious refusal to pay an insurance loss is not to be deduced from the mere fact that upon suit the verdict is adverse to the defendant. [Patterson v. Insurance Co., 174 Mo. App. 44; Keller v. Insurance Co., 198 Mo. 440.] If the fact of an adverse decision is to constitute the sole and decisive test, it would be fairly plain that this court was in error when it held the statute to be constitutional. For it is only upon the fundamental ground of *a vexatious refusal* to pay that the penalty inflicted by the statute can be upheld. The defendant is to be allowed to entertain an honest difference of opinion as to its liabiliy, or as to the extent of such liability under the contract of insurance, and to litigate that difference;

otherwise, the provision of the statute is obviously so shot through with duress as to be invalid upon any view It is from the very nature of the case, and from the protean form which the facts of the case assume, difficult, if not impossible, to frame any general rule for use in determining when a refusal to pay is vexatious and when it is not. Judge TRIMBLE, of the Kansas City Court of Appeals, has announced a rule, which commends itself to us so far as it goes, and it goes as far as it is wise or safe to go in announcing a rule to govern cases wherein the facts are as variant as we find them in insurance cases upon this question. This rule reads thus:

"And while affirmative proof is not required to show vexatious refusal, yet the penalty should not be inflicted unless the evidence and circumstances show that such refusal was wilful and without reasonable cause as the facts appeared to a reasonable and prudent man before the trial; and merely because the judgment, after trial, is adverse to defendant's contention, is no reason for inflicting the penalty." [Patterson v. American Ins. Co., 174 Mo. App. l. c. 44.]

In the case at bar there was no refusal to pay after the time at which by the terms of the policy, defendant became bound to pay. And while lapse of such time would not, of course, always be the true test, since the vexatious and recalcitrant attitude of the defendant might by the proof be shown to be such as that a delay to sue for the 60 days allowed would be futile, yet there is not in this case any showing of any such attitude. [Young v. Insurance Co., 269 Mo. 1; Fay v. Insurance Co., 268 Mo. l. c. 389.] We are constrained to say that there was not in evidence any substantial facts upon which to base a finding of any penalty for vexatious refusal to pay the loss, and if upon a new trial none be offered, this issue ought not to be submitted to the jury.

VII. We are urged in an able argument to re-examine the question of the constitutionality of said Section 7068, Revised Statutes 1909. We passed upon this question in the case of Keller v. Home Ins. Co., 198 Mo. 440, and held this statute con-

*Constitutional Question.* stitutional. This holding we approved in State v. Railroad, 242 Mo. l. c. 360. Both of the above cases were decided before the instant case was appealed. As a rule of convenience, at least (regardless of the technically correct logic and strict accuracy thereof), and to prevent a sort of constructive fraud upon the courts, in that an appellant may not be allowed arbitrarily and for his own ends nicely to pick and choose his appellate forum, we have ruled uniformly since the case of Dickey v. Holmes, 208 Mo. 664, that when we have once determined the precise constitutional question raised in a case wherein the Courts of Appeals would otherwise, absent such constitutional question, have jurisdiction, we will not thereafter assume jurisdiction of the case on account of the constitutional question mooted; *provided,* such determination of the constitutional question was had prior to the date at which the appeal was taken in the case. [State v. Campbell, 214 Mo. 362; Bank v. Glass Co., 243 Mo. 409; Richmond v. Creel, 253 Mo. 256; State v. Finley, 259 Mo. 414; State v. Wild, 190 S. W. 273.] Though the case is here and we have jurisdiction upon another ground, we yet see no reason to change our ruling.

Other alleged errors are urged in the briefs of counsel, but since these are such as will not of necessity occur upon a new trial, we shall not take up space in discussing them. For the error noted let the case be reversed and remanded for a new trial not inconsistent with what we have herein written. It is so ordered. All concur, except *Williams, J.,* not sitting.

PER CURIAM:—Pending the term, respondent comes and enters as of the date of the judgment *nisi,*

a voluntary *remittitur* in the sum of $500, being the amount adjudged in favor of respondent for attorneys' fees, and thereupon moves the court to set aside the judgment reversing and remanding the case and to affirm it. Since all of the errors for which the reversal was ordered were bottomed upon the single matter of the unwarranted allowance of attorneys' fees, the court is of the opinion that the *remittitur* should be allowed and ordered entered, and the motion of respondents to affirm be thereupon sustained. It is therefore ordered that the judgment reversing and remanding this case be set aside, and the judgment in favor of respondent, except as to the sum of $500, allowed as attorneys' fees, be affirmed. Let this be done.