Paul BOREN, (Plaintiff) Respondent,

v.

The FIDELITY AND CASUALTY COMPA-
NY OF NEW YORK, (Defend-
ant) Appellant.

No. 31333.

St. Louis Court of Appeals.

Missouri.

Sept. 17, 1963.

Motion for Rehearing or for Transfer to
Supreme Court Denied Oct. 14, 1963.

Roberts & Roberts, J. Richard Roberts, Farmington, for appellant.

Schnapp & Cooper, Fredericktown, Jackson, Thomasson & Dickerson, Cape Girardeau, for respondent.

WOLFE, Acting Presiding Judge.

This is an action to recover from the defendant insurance company a fire loss that occurred when the plaintiff's insured vehicle ran off the road and burned. The trial was to the court. There was a finding and judgment for the plaintiff in the sum of $7,500, and the defendant appealed.

There is no dispute about the following facts. The plaintiff was engaged in the "wrecker and garage" business at LaMotte, Missouri. His truck, which is the vehicle here in question, was a tow truck described by the plaintiff as an "F–800, overhead valve with a five-speed transmission, two-speed axle, straight air brakes, * * *. It had a Tulsa drag winch. It had a W–45 Holmes split boom wrecker hoist with all the necessary clearance lights, stop lights, back-up lights, and red lights."

The plaintiff, who was a mechanic and welder, had assembled the truck and its component parts, such as the hoist winches and rigging. For the truck portion he had purchased two identical trucks and disassem-

bled them. He had cut the frame of one truck off at the cab and joined the portion of the frame which he had cut off to the frame of the other truck to give it added length. He welded this additional frame on and put a quarter-inch plate along it to give it strength. He had also rebuilt the motor of the truck. The vehicle was capable of hoisting and dragging a trailer-tractor wreck.

At the time the car ran off the road and burned, it had been in use as a wrecker for about eighteen months. The accident occurred on November 28, 1960. The truck had been traveling downgrade for some distance, with a frequent use of the air brakes. The air pressure went down and the plaintiff's efforts to brake the truck with the motor by throwing it in gear resulted in putting the motor in neutral. With neither brakes nor motor to slow it, the truck speeded downgrade, left the road, hit some trees, and burned. The cab was completely burned out, the large front tires were ruined, and a tree by the side of the truck burned. All of the mechanism that operated the hoist and drag lines was close to the back of the cab, which was warped and twisted by the fire.

The defendant had insured the wrecker for $10,000. There is no dispute about the insurance being in force. Only one point is raised on this appeal, and that is as follows:

"The verdict of the trial court is excessive and the amount thereof is not supported by the evidence since there is no valid evidence that the vehicle in question could not be repaired for less than $7,500.00."

The evidence offered on behalf of the plaintiff as to the loss sustained consisted, in part, of the testimony of the plaintiff. He had been in the garage business for eight years, working with various metals, and for some time before that he had been so engaged. He said that the truck itself and the wrecker mechanism were wrecked and burned. He said that the heat had

been so intense that the light bulb on the highest part behind the cab melted, and that the control bars were bent. He said that the value of the truck prior to the fire was $10,000, and that thereafter it was worth only $2,500. He said that the heat of the fire affected the metal parts of the wrecker. He also stated that to be serviceable, every part had to be in reliable operation. He also said that the operation of a wrecker was hazardous. Illustrating this statement he said that a failure in any part might cause the wrecker to drop a car that it was lifting, and that if people were pinned under the car, such an occurrence would probably prove fatal to them.

A machinist who had been engaged in the business for over forty years and operated his own machine shop also testified. He had done work for many large corporations operating in the general area of his place of business. His work had consisted of dismantling, repairing, and reassembling many kinds of machinery. He examined the wrecker at the request of the plaintiff. He said that the hoisting mechanism looked like it had been very hot, and from his examination the heat had been sufficient to anneal some of the metal parts. He concluded that it would cost at least $5,000 to repair the hoisting and dragging mechanism, exclusive of any other damage. He did not consider the wrecker worth repairing.

A witness who had for the past six years operated his own machine shop and who had been before that employed as a machinist by the National Lead Company testified that he had examined the wrecker thoroughly and concluded that the heat of the fire weakened the wrecker so that it would have to be replaced with new parts.

Another witness ran a service station and salvage operation. He had worked with wreckers for about twenty years, and had been Batallion Motor Sergeant in World War II and Transportation Sergeant in the Korean action. He had been in charge of many sorts of heavy equipment, including

wreckers. He was familiar with the wrecker here in question and had operated it. He said that it was worth at least $8,500 before the fire, and not worth more than $250 after the fire.

Photographs offered in evidence by the plaintiff showed part of the wrecking equipment blackened by fire, and the truck itself appeared to be badly burned.

The defendant called to the stand a witness who worked for Automobile Damage Appraisers. He had examined the wreck and he said that he did not believe there was any damage to the split boom. He said that it did not look like the fire got that far back. He concluded that the winch and gear box close to the burning cab had not been damaged. He reached this conclusion because he found the cables still had grease on them, and that there was oil in the gear box. He said that he thought $2,500 would "put it back road ready".

The service manager of Harris Truck and Trailer Sales testified for the defendant. The company for which he worked had the tractor on their lot. He said that he had examined it and that the truck part would have to be replaced. He also said that the wrecker portion, consisting of the boom, power take-off, etc., was not hurt by the fire. He stated that paint was still on them, and that heat sufficient to affect the metal would have burned the paint off. He also testified that he found oil in the gear box, and concluded that the gears had not been hot enough to damage them. He said that his company would replace the truck with one of like make and model, and move the hoisting and drag equipment to it for $1,795.

The policy provides:

"The limit of the company's liability for loss shall not exceed either (1) the actual cash value of the automobile, or if the loss is of a part thereof the actual cash value of such part, at time of loss or (2) what it would then cost to repair or replace the automobile or such part thereof with other of like kind and quality, with deduction for depreciation, or (3) the applicable limit of liability stated in the declarations.

"The company may pay for the loss in money or may repair or replace the automobile or such part thereof, as aforesaid, or may return any stolen property with payment for any resultant damage thereto at any time before the loss is paid or the property is so replaced, or may take all or such part of the automobile at the agreed or appraised value but there shall be no abandonment to the company."

In the words of the appellant, it is contended that by the above terms, "the measure of damages to be applied in this case would be the lesser of the following:

"(1) The difference in the actual cash value of Plaintiff's vehicle immediately before and its value immediately after the collision and fire;

"(2) The cost of repairing or replacing the Plaintiff's vehicle;

"(3) The limit of liability stated in the declarations of the policy (in this case $10,000.00).

"Thus, before the difference in before and after value becomes the amount of the Company's obligation it must be determined that this amount is the lesser of the three possible measures of damages. Clearly, this amount is less than the stated value of $10,000.00 and thus the only issue is whether the difference in before and after value is less than the cost of repairs or replacement with like kind and quality."

This contention is quite at variance with Section 379.150, RSMo 1949, V.A.M.S., which states:

"Whenever there is a partial destruction or damage to property covered by insurance, it shall be the duty of the party writing the policies to pay the assured a sum of money equal to the dam-

age done to the property, or repair the same to the extent of such damage, not exceeding the amount written in the policy, so that said property shall be in as good condition as before the fire, *at the option of the insured.*" (Emphasis ours.)

 This statute prevails over the policy, and under it the insurer has the option to allow the assured to repair, or to claim a sum of money equal to, the damage to the vehicle. The amount of such sum is fixed by the difference between its value before the fire and immediately thereafter. Non-Royalty Shoe Co. v. Phoenix Assur. Co., 277 Mo. 399, 210 S.W. 37; Scism v. Home Ins. Co. of New York, Mo.App., 224 S.W. 48; Offutt v. National Fire Ins. Co. of Hartford, Conn., Mo.App., 273 S.W. 161; Branigan v. Jefferson Mutual Fire Ins. Co., 102 Mo.App. 70, 76 S.W. 643.

The defendant relies upon statements in the case of Boecker v. Aetna Casualty and Surety Co., Mo.App., 281 S.W.2d 561, and Watkins v. Motors Insurance Corporation, Mo.App., 271 S.W.2d 584. But neither of these cases dealt with the statute here under consideration, and in neither case was there any proof of the value before and after the damage to the cars in question. The case, however, upon which the defendant chiefly relies is Williams v. Farm Bureau Mutual Ins. Co. of Missouri, Mo.App., 299 S.W.2d 587. In that case the terms of the policy were held to control, but it was pointed out that the defendant was a mutual insurance company, and not under Section 379.150, above quoted. Mutual companies are exempt from that section and certain other sections by virtue of Section 379.310, RSMo, which was first enacted in 1919.

We are obliged to try the case de novo on appeal, but in doing so, we defer to the findings of the trial court where there is a conflict of evidence and the determination of the case must depend on where the truth rests. There was a wide variance between the testimony of the plaintiff's witnesses and those of the defendant. The testimony was directed, for the most part, to the question of whether or not the hoist and drag mechanism had been damaged by the fire. As set out above, the evidence substantiates the plaintiff's claim that the mechanism was damaged. The value of the whole truck before and immediately after the fire was also fixed by experienced witnesses. It therefore appears that the appellant's point is without merit.

The judgment is affirmed.

ANDERSON, J., and JACK P. PRITCHARD, Special Judge, concur.

RUDDY, J., not participating.